The STATE of Ohio, Appellee,

v.

PALICKI, Appellant.

[Cite as *State v. Palicki* (1994), 97 Ohio App.3d 175.]

Court of Appeals of Ohio,
Wood County.

No. 94WD011.

Decided Sept. 16, 1994.

*Alan R. Mayberry,* Wood County Prosecuting Attorney, for appellee.

*C. Thomas McCarter,* for appellant.

*Per Curiam.*

On May 11, 1993 appellant, Kenneth Palicki, was stopped by state troopers in a posted target enforcement area on Interstate 75 for driving four miles per hour over the posted speed limit. After the stop, several events occurred, including a dog sniff and a search of the car appellant drove, that resulted in appellant receiving two citations charging him with violations of R.C. 2925.14 for possession of drug paraphernalia and possession of less than one hundred grams of marijuana. The citations were filed in the Perrysburg Municipal Court. Appellant filed a motion to suppress the evidence seized following the search of the car he drove, arguing that the warrantless search was conducted without probable cause, and without a reasonable, articulable suspicion that criminal activity had taken place. Appellant later filed an amendment to the motion to suppress, adding the argument that the evidence should be suppressed because a "dog sniff" is a search under the constitution of the state of Ohio. He also added the argument that his due process rights had been violated by the state troopers, asserting that they had forced him to drop his pants, to expose his sex organs, and to move his testicles in full view of the motoring public, to ensure that he was not hiding contraband on his person. A hearing was conducted on the motion to suppress, and the court took the issue of whether a dog sniff is a search under advisement.

Following the hearing, but before the court filed a decision and journal entry, appellant filed another motion to suppress. In the new motion to suppress, appellant asked for the suppression of "Statements taken from or made by the Defendant." The trial court filed a decision and judgment entry on September 10, 1993, in which it stated that the new motion to suppress was "insufficient as a matter of law on its face to require a hearing for the reason that the motion or memorandum does not contain factual allegations justifying relief." The court also stated: "If defendant has discovered additional grounds for suppression he should file a motion for leave to file and state with particularity which statements he wishes to suppress." No further action was taken by appellant relating to the new motion to suppress, and on December 9, 1993, the trial court filed a journal entry in which it *sua sponte* dismissed the new motion to suppress on the basis that the new motion did not "comply with Criminal Rule 12(C) and Local Rule 1.06."

On January 7, 1994, appellant accepted a plea agreement. Appellee dismissed the charge of possession of drug paraphernalia in exchange for appellant's plea of no contest relating to the charge of possession of less than one hundred grams of marijuana. The trial court found appellant guilty of possession of less than one hundred grams of marijuana, and ordered appellant to pay a $100 fine and court costs. Appellant then brought this appeal.

Appellant has presented one assignment of error for our consideration. The assignment of error is:

"A. The trial court erred in denying Mr. Palicki's motion to suppress because the evidence and statements were obtained in violation of Mr. Palicki's Fourth and Fifth Amendment rights under the United States Constitution as applied to the State through the Fourteenth Amendment as well as Article I, Section 14 of the Ohio Constitution."

We begin by noting that a no contest plea pursuant to Crim.R. 12(H) preserves issues relating to a denial of a motion to suppress evidence for appeal. We also note that the Supreme Court of Ohio has instructed appellate courts reviewing a ruling on a motion to suppress to keep in mind that the trial court is vested with the function of weighing the evidence and determining the credibility of witnesses. *State v. DePew* (1988), 38 Ohio St.3d 275, 277, 528 N.E.2d 542, 547; *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583; see, also, *State v. Torres* (1990), 67 Ohio App.3d 268, 586 N.E.2d 1153. This court will therefore review the record to determine whether there is substantial evidence to support the trial court's ruling. *State v. Hafner* (Feb. 16, 1990), Wood App. No. WD–88–33, unreported, 1990 WL 12713.

A review of the transcript of the testimony taken at the hearing conducted on the first motion to suppress and its amendment shows that the state troopers involved in the arrest of appellant had a considerably different recollection of the events leading to the arrest from the recollection of appellant. The testimony of the state troopers portrayed the facts as follows.

The first trooper to testify stated that he received a radio report from another officer conducting the speed enforcement activity, informing him that the car driven by appellant had been clocked on radar at four miles per hour over the speed limit. He stated that he waved appellant over to the side of Interstate 75. As he approached the car appellant was driving, he noticed appellant making furtive movements with his left hand, as though appellant was attempting to hide something under the seat. When the trooper reached the driver's window, he explained why appellant had been stopped. He noticed that appellant's left hand was cupped, and that appellant was holding cigarette rolling papers. While cigarette rolling papers are not illegal, they are sometimes used to roll illegal substances, and the trooper's suspicions were aroused.

The trooper is part of the drug interdiction force for state troopers in northwest Ohio, and he is always accompanied in his cruiser by a dog that is trained to detect illegal drugs. He decided to get the dog from the cruiser, and to have the dog sniff the vehicle driven by appellant to see if the dog would "alert," showing that the dog smelled illegal drugs. He called in another trooper for assistance, got the trained dog from the cruiser, and walked the dog around the vehicle driven by appellant. He had learned that the vehicle belonged to appellant's girlfriend. The dog alerted, by scratching at the door of the car. The trooper called out to appellant that the dog had alerted, and that he was going to put the dog inside the car, so that the dog could pinpoint the location of the drugs. He advised appellant to tell where the drugs were hidden, because the dog would do damage to the interior of the car as it tried to uncover the hidden drugs. The dog did alert to the dash area in the car, and a small amount of marijuana was found in the ashtray. In addition, some drug paraphernalia was found in the car.

The second trooper to testify was the one called to give assistance. He stated that he told appellant to get out of the car, and that he stood with appellant at the back of the car while the trained dog sniffed for drugs, to ensure that appellant was not bitten by the dog. He requested appellant's driver's license, and saw screens in appellant's wallet that can be used in pipes to burn illegal drugs. He asked appellant what the screens were and where they came from. Appellant identified the screens and the name of the store where they were purchased, but he did not respond when he was asked why he had them in his wallet. The trooper told appellant that possession of less than one hundred grams of an

illegal substance is a misdemeanor, and he advised appellant to tell him the location of any drugs in the car. Just before the trained dog alerted, appellant stated that there was a small amount of marijuana in the ashtray. When the trooper controlling the dog called over after the dog alerted, the second trooper told him that appellant had disclosed the location of the marijuana, and the dog was returned to the first trooper's cruiser. The second trooper placed appellant under arrest, and gave appellant the *Miranda* warnings as soon as the trained dog alerted to the presence of drugs in the car. He told appellant to step behind the car out of view of passing motorists, and to unzip the jeans he was wearing, so that the trooper could be sure appellant was not hiding drugs in his crotch. He stated that he never touched appellant at any time, and that no drugs were found on appellant's person, so he was told to zip his jeans back up. The second trooper wrote up the citations and gave them to appellant.

Appellant's testimony portrayed the facts of this case as follows. Appellant stated that he was waved over by a state trooper, while driving his girlfriend's car on Interstate 75. He pulled to the side of the highway, and was told by the trooper that he had been pulled over for following another car too closely. He stated that he was asked for his driver's license and for the registration of the car. He did not know where the registration was, so he looked in the glove compartment, emptying out all of the contents, including cigarette rolling papers. He said the officer immediately radioed for another trooper to assist, when the cigarette rolling papers fell from the glove compartment. He said the second trooper pulled him from the car and took him to the back of the car. When they reached the back of the car, he stated that the trooper took his wallet and emptied all of its contents onto the ground. He said the first trooper kept calling over that he should tell where any drugs were hidden so that the dog would not damage the interior of the car, making appellant's girlfriend angry at appellant. He said he did not know any drugs were in the car, but that he did not want any damage to be done to his girlfriend's car, so he asked the second trooper not to let the dog into the car, but to look in the car himself. He stated that he gave the second trooper suggestions of where he could look, including in the ashtray. He stated that when the drugs were found, he was placed under arrest. He testified that he was wearing shorts with an elastic waistband, and that the second trooper made him pull the shorts and his undershorts down near his knees, exposing his genitalia to the full view of the motoring public. He stated that he was told to move his testicles from side to side to allow the trooper to see whether he was hiding any drugs in his crotch.

On cross-examination, he was asked whether any of his testimony would change if he was told that a videotape was made of his arrest. He stated that his story would not change. The prosecution then announced that it had learned

that day that a videotape of the arrest did exist. The videotape was shown to the court the next morning. The videotape showed that appellant was wearing jeans at the time of his arrest, not shorts with an elastic waistband. The videotape showed that the second trooper did not drop the contents of appellant's wallet on the ground, and showed that the brief examination of his crotch was done behind the car, out of the view of the motoring public. The videotape also showed that appellant never pulled his pants down. He merely unzipped the zipper.

In the decision and journal entry of the trial court, the trial judge found that the testimony of the state troopers was credible, and that the testimony of appellant was not credible. We will not disturb the trial judge's ruling on the credibility of witnesses. See *State v. DePew, supra,* 38 Ohio St.3d at 277, 528 N.E.2d at 547. Accepting the state troopers' testimony as true, we now turn to the question of whether the dog sniff conducted was a search.

The Supreme Court of the United States has stated that a dog sniff is not a search under the federal Constitution. *United States v. Place* (1983), 462 U.S. 696, 707, 103 S.Ct. 2637, 2644–2645, 77 L.Ed.2d 110, 120–121. The facts in *United States v. Place* related to the use of a trained dog to sniff luggage at airports to determine whether the luggage contained illegal drugs. *Id.* at 698–699, 103 S.Ct. at 2639–2640, 77 L.Ed.2d at 114–115. Appellant argues that this court should limit the ruling in *United States v. Place* that a dog sniff is not a search to cases involving the use of trained dogs to sniff luggage at airports. However, as this court has previously noted, federal courts have followed the reasoning announced by the United States Supreme Court in *United States v. Place, supra,* at 707, 103 S.Ct. at 2644–2645, 77 L.Ed.2d at 120–121, to reach the conclusion that a dog sniff is not a search in other circumstances, including the use of a dog to sniff a vehicle which was lawfully detained. *State v. Riley* (1993), 88 Ohio App.3d 468, 475, 624 N.E.2d 302, 306–307, citing *United States v. Rodriguez–Morales* (C.A.1, 1991), 929 F.2d 780; and *United States v. Morales–Zamora* (C.A.10, 1990), 914 F.2d 200. Accordingly, we will not limit the statement of the United States Supreme Court that a dog sniff is not a search to the use of trained dogs to sniff luggage at airports.

Appellant next argues that even if the use of the dog to sniff the exterior of the car was not a search, the use of the dog to sniff the interior of the car was more intrusive, and was a search. Appellant argues that the search was conducted without probable cause, and was an invalid warrantless search, because it did not fall under any of the exceptions to the requirement of a warrant before a search is conducted. We are not persuaded by appellant's reasoning.

First, we note that the United States Supreme Court declared that a dog sniff is *sui generis* when it concluded that a dog sniff is not a search, because it

noted that a dog is able to smell contraband without rifling through the suspect's possessions. *Id.*, 462 U.S. at 707, 103 S.Ct. at 2644–2645, 77 L.Ed.2d at 120–121. The use of the dog inside the car to sniff the interior of the car was no more intrusive than the use of the dog to sniff the outside of the car, since the dog was still able to smell the presence of contraband without disturbing possessions of appellant. Furthermore, probable cause existed for a search of the interior of the car before the dog was allowed inside the car, because the dog had already alerted when outside the car, showing that he smelled illegal drugs in the car, and the accreditation of the dog was stipulated at the hearing on the motion to suppress. See *United States v. Venema* (C.A.10, 1977), 563 F.2d 1003, 1007. Accordingly, even if appellant's characterization of the sniff of the interior of the car as a search is correct, the search was supported by probable cause, and a warrant was not required because of the exigent circumstances exception to the requirement of a warrant for a search. See *United States v. Ross* (1982), 456 U.S. 798, 800, 102 S.Ct. 2157, 2160, 72 L.Ed.2d 572, 578. Finally, the trooper who arrested appellant stated that he placed appellant under arrest when the dog first alerted, so even if we were persuaded by appellant's argument that the use of the dog in the interior of the car was a search, the warrantless search was still valid because of the exception allowing a warrantless search of a vehicle incident to an arrest when probable cause exists to search the vehicle for contraband. See *New York v. Belton* (1981), 453 U.S. 454, 460–461, 101 S.Ct. 2860, 2864–2865, 69 L.Ed.2d 768, 774–775; *State v. Brown* (1992), 63 Ohio St.3d 349, 351–352, 588 N.E.2d 113, 114–115.

Appellant next argues that even if a dog sniff is not a search under the federal Constitution, a dog sniff is a search under the Constitution of the State of Ohio. Appellant cites to a decision released by the Tenth District Court of Appeals in Ohio in 1976 which contained the ruling that a dog sniff is a search. *State v. Elkins* (1976), 47 Ohio App.2d 307, 310–311, 1 O.O.3d 380, 381–382, 354 N.E.2d 716, 717–719. Appellant's reliance on *State v. Elkins* is misplaced for two reasons. First, the *State v. Elkins* court did not base its ruling upon a provision of the Constitution of Ohio; it ruled that a dog sniff is a search pursuant to the Fourth Amendment to the United States Constitution. *Id.* at 310–313, 1 O.O.3d at 381–383, 354 N.E.2d at 718–720. The ruling of the *State v. Elkins* court regarding the status of a dog sniff under the United States Constitution lost its precedential value when the United States Supreme Court subsequently ruled that a dog sniff is not a search under the Fourth Amendment of the United States Constitution. *United States v. Place, supra.* Second, this court previously analyzed the holding in *State v. Elkins* and rejected the finding that a dog sniff is a search. *State v. Riley* (1993), 88 Ohio App.3d at 476, 624 N.E.2d at 307. We therefore conclude that the use of the trained dog to sniff the car driven by

appellant was not a search under the Constitution of the United States or under the Constitution of the State of Ohio.

Appellant's remaining arguments relate to whether the trial court erred when it failed to grant his motion to suppress any and all of the statements he made during the stop and search of his vehicle. Appellant states that the issue was preserved for appeal when he filed the second motion to suppress in the trial court. Appellee contends that the issue was not preserved for appeal, because appellant failed to delineate any specific arguments to the trial court to show what statements should be suppressed or why statements should be suppressed, even after the trial court filed a decision and judgment entry requiring more definite statements. Appellee contends that the arguments now presented by appellant are being argued for the first time on appeal and should not be addressed by this court.

We will not address the specific arguments presented by appellant relating to his second motion to suppress, because our review of the record shows that the trial court was correct when it ruled that the second motion to suppress did not contain factual allegations to support appellant's claims with particularity sufficient to entitle him to a hearing on the motion to suppress. This court has previously ruled that a motion to suppress statements on the grounds that the statements were taken in violation of *Miranda* warning rights must be supported with factual allegations to support the claim with particularity. See *Bryan v. Fox* (1991), 76 Ohio App.3d 607, 610, 602 N.E.2d 753, 755, citing *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 219, 524 N.E.2d 889, 892. The failure to provide any specific factual basis for the motion to suppress, despite the trial court's request for clarification, justifies the denial of the motion to suppress without an evidentiary hearing. *Bryan v. Fox*, 76 Ohio App.3d at 610, 602 N.E.2d at 755. In addition, the trial court did not err when it dismissed the motion as untimely, because appellant never presented the trial court with any reason why the interests of justice required an extension of the time for making the pretrial motion, despite the specific invitation by the trial judge to ask for leave to file. The Supreme Court of Ohio has ruled that the failure to timely file a pretrial motion, including a motion to suppress evidence and statements, constitutes a waiver of the issues raised in the motion. *State v. Wade* (1978), 53 Ohio St.2d 182, 189–190, 7 O.O.3d 362, 366–367, 373 N.E.2d 1244, 1249–1250, vacated in part on other grounds, *Wade v. Ohio* (1978), 438 U.S. 911, 98 S.Ct. 3138, 57 L.Ed.2d 1157. Accordingly, appellant's assignment of error is not well taken.

The judgment of the Perrysburg Municipal Court is affirmed. Appellant is ordered to pay the court costs of this appeal.

*Judgment affirmed.*

ABOOD, P.J., HANDWORK and GLASSER, JJ., concur.