DECISION AND JOURNAL ENTRY
Defendant George A. Chuey has appealed from a judgment of the Medina County Common Pleas Court that found him guilty of possession of cocaine in violation of R.C. 2925.11(A). This Court reverses and remands this matter to the trial court for further proceedings consistent with this opinion.
 I.
On March 4, 1998, the Medina County Grand Jury indicted Defendant on one count of possession of cocaine. Defendant moved the trial court to suppress the evidence that had been seized by Medina County Sheriff's deputies during a warrantless search of his bedroom at Ms. Charlotte Carmichael-Yergin's ("Ms. Yergin") residence. Defendant asserted that Ms. Yergin did not have authority to consent to the search of his room; therefore, the evidence seized as a result of that search had to be suppressed.
At the time of the search, Defendant was a boarder in the home of Ms. Yergin. On February 6, 1998, Defendant paid Ms. Yergin $250.00 for a private room and board in her home. Defendant was also free to use common areas of the home, i.e. the kitchen, living room, and bathroom. Although Defendant's room was not originally a bedroom, the room contained a bed, wardrobe, and other furniture. Additionally, Defendant stored his personal belongings in that room.
Ms. Yergin's minor son, George Carmichael, and another boarder, Thomas Duval, also resided in the home. During February 1998, Mr. Carmichael was placed on home arrest as a condition of his juvenile probation. Prior to the date of the search, Mr. Carmichael tested positive for cocaine on a random drug screen. As a result of his test, Deputy Rhonda Radick sought Ms. Yergin's consent to a search of her home. Ms. Yergin went to the police station and signed a form consenting to a search of her home. Prior to signing the form, Ms. Yergin informed Deputy Radick and Deputy Donald Whitacre that in addition to herself and her son, two boarders lived in the home.
On February 20, 1998, the police arrived at Ms. Yergin's residence to perform the search. Prior to entering the home, Deputy Troy Lee Siebert, who was out on routine patrol, stopped to inquire about the other deputies' presence. Deputy Whitacre informed him that they were about to perform a search based on a home arrest urine screen violation. Deputy Whitacre further informed Deputy Siebert that he believed that there were drugs in the home, that the homeowner had someone renting from her, and that he believed that the drugs were in the rented room. Deputy Siebert indicated to Deputy Whitacre that, if the room was rented, they would need a search warrant to go into that room. Deputy Whitacre then informed Deputy Siebert that they had consent from the owner to search; therefore, a warrant was not necessary.
After entering the home, the police deputies performed a pat-down search of everyone present in the home. There were six people present at that time: Ms. Yergin, Mr. Carmichael, Defendant, Mr. Duval, Nicole Pride, Lonnie Hunt, and Heather Stoneridge. After the pat-down, the individuals were seated in the living room.
Prior to the search, the deputies ascertained which room belonged to which individual. About fifteen to twenty minutes after the deputies arrived, Ishtar, a narcotic detecting canine, was brought in to perform the search. The first room searched belonged to Mr. Carmichael. Eventually, Ishtar was taken into Defendant's bedroom. Defendant did not verbally object to the search at any time. However, due to where he was seated in the living room, Defendant was not in a position to see the deputies enter his room to conduct the search. Furthermore, the deputies did not inform him that they were searching his room.
While in Defendant's room, Ishtar alerted the deputies to a guitar case and a laundry basket, but no drugs were found. After a deputy pointed out a safe that was located in Defendant's room, Ishtar alerted to the safe. Apparently, a deputy asked Defendant if he had a key to the safe. Defendant informed the deputy that the safe was not locked and opened the safe for the deputy. A search of the safe resulted in the discovery of cocaine, and Defendant was arrested.
After the hearing on Defendant's motion to suppress, the trial court denied the motion. Following that denial, Defendant moved the trial court to reconsider its denial of his motion. Prior to the trial court's ruling on the motion to reconsider, the State moved the court to reopen the suppression hearing to consider additional testimony. Another hearing was held on the motion to suppress, and the trial court again denied the motion.
Defendant entered a plea of no contest to one count of possession of cocaine. The trial court found Defendant guilty and sentenced him accordingly. Defendant timely appealed, asserting one assignment of error.
 II. The trial court erred [by] overruling the motion to suppress filed by [Defendant].
 In his sole assignment of error, Defendant has asserted that the trial court erred by failing to suppress the evidence obtained in violation of his Fourth Amendment rights. This Court agrees.
The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." Evidence obtained in violation of the Fourth Amendment is inadmissible. Mapp v. Ohio
(1961), 367 U.S. 643, 655, 6 L.Ed.2d 1081, 1090. Under the Fourth and Fourteenth Amendments, a search conducted without a warrant is "per se unreasonable * * * subject only to a few specifically established and well-delineated exceptions." Schneckloth v.Bustamonte (1973), 412 U.S. 218, 219, 36 L.Ed.2d 854, 858, quotingKatz v. United States (1967), 389 U.S. 347, 357, 19 L.Ed.2d 576,585. One exception to the warrant requirement is a search conducted pursuant to consent. Schneckloth, 412 U.S. at 219,36 L.Ed.2d at 858.
Initially, the State has argued that a "sniff test" by a trained narcotics dog does not constitute a search within the meaning of the Fourth Amendment. Therefore, the State has asserted that Defendant's constitutional rights were not implicated when the police took Ishtar into his room to sniff for the presence of illegal drugs. This Court disagrees.
The United States Supreme Court has held that, during a particular course of an investigation, exposure of a person's luggage, which was located in a public place, to a trained canine did not constitute a search. United States v. Place (1983),462 U.S. 696, 707, 77 L.Ed.2d 110, 121. Ohio Courts have also held that a canine-sniff of the exterior of a car, which had been lawfully detained by police officers, did not constitute a search. See, e.g., State v. Palicki (1994), 97 Ohio App.3d 175, 180. One of the reasons often cited for the determination that a "canine-sniff" is not a search is that it is less intrusive than other means, such as rifling through a person's possessions, and it discloses no more than the presence or absence of narcotics.Place, 462 U.S. at 707, 77 L.Ed.2d 121; Palicki,97 Ohio App.3d at 180. In order for this to apply, however, "the canine team must be lawfully present at the location where the sniff occurs."United States v. Reed (C.A.6, 1998), 141 F.3d 644, 650.
Therefore, this Court must determine whether the deputies were lawfully present when Ishtar was taken into Defendant's room. The State has asserted that the search and seizure of the cocaine was valid because Ms. Yergin signed a form consenting to the search of the premises. Defendant has argued that Ms. Yergin's consent to search does not validate the warantless search of his private room. He has asserted that, as a boarder in Ms. Yergin's home, he had a reasonable expectation of privacy in his bedroom. He has concluded, therefore, that Ms. Yergin could not consent to the search of that room.
When the state seeks to establish consent for a warrantless search, it is not limited to proving that the defendant himself consented, but it may also show that the consent was obtained from a third party who possessed common authority or other sufficient relationship over the premises to be inspected. United States v.Matlock (1974), 415 U.S. 164, 171, 39 L.Ed.2d 242, 249-50. InMatlock, the Court noted that:
 Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third party consent does not rest upon the law of property, with its attendant historical and legal refinements, * * * but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched. (Citations omitted.)
Id. at 415 U.S. at 171, 39 L.Ed.2d at 250, fn. 7. While defining common authority, the Court pointed out that a landlord could not validly consent to the search of a home he had rented to another. Id., citing Chapman v. United States
(1961), 365 U.S. 610, 5 L.Ed.2d 828; see, also, State v.Green (1973), 36 Ohio Misc. 140, 142. Further, although a third party who is in joint possession of the premises may consent to a search, "ordinarily one co-tenant's separate personal bedroom is not deemed to be in the joint possession of other co-tenants in a house shared by unrelated persons."Columbus v. Copp (1990), 64 Ohio App.3d 493, 497. A tenant in a boarding house clearly has a reasonable expectation of privacy in his own bedroom that is not shared with a co-tenant. Id. at 498.
The State has the burden of establishing common authority.Illinois v. Rodriguez (1990), 497 U.S. 177, 181, 111 L.Ed.2d 148,156. In the case at bar, there was no evidence that any of the other residents had any right to possession or control of Defendant's separate bedroom. Although Defendant's door did not have a lock, no one entered his bedroom unless they had his permission. Because the State failed to establish that Ms. Yergin had common authority over Defendant's room, the State failed to show that Ms. Yergin had actual authority to consent to the search.
Ms. Yergin's lack of actual authority to consent does not perse invalidate the search of Defendant's bedroom. A warrantless entry is valid if the police reasonably, although incorrectly, believed that the person giving consent possessed common authority over the premises. Rodriguez, 497 U.S. at 189,111 L.Ed.2d at 161. In Rodriguez, however, the Supreme Court noted that its holding did not automatically validate a search in which police officers accepted an invitation to enter the premises when the invitation was accompanied by an assertion that the person who consented to the search lived there. Id., 497 U.S. at 188,111 L.Ed.2d at 161.
 As with other factual determinations bearing upon search and seizure, determination of consent to enter must "be judged against an objective standard: would the facts available to the officer at the moment `warrant a man of reasonable caution in the belief'" that the consenting party had authority over the premises?
 Id. If the surrounding circumstances are such that a reasonable person would doubt that the consenting party had authority, a warrantless entry without further inquiry is unlawful unless the authority actually exists. Id., 497 U.S. at 188-89, 111 L.Ed.2d at 161.
The trial court determined that the deputies had a reasonable belief that Ms. Yergin had authority to consent to the search of Defendant's room. An appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence from the suppression hearing. State v.Armstrong (1995), 103 Ohio App.3d 416, 420. After accepting the trial court's findings of fact, however, the appellate court must independently determine as a matter of law whether the trial court applied the appropriate legal standard to those facts and whether the trial court arrived at the proper legal conclusion. Id.
The trial court specifically found that Ms. Yergin gave the deputies consent to search and did not limit that consent to any particular area of the home. The trial court stated that the officer's belief that she had authority to consent was reasonable based on the following reasons: (1) Ms. Yergin was the apparent owner of the home; (2) Ms. Yergin had consented to the installation of the "home arrest" unit in the home; (3) although Ms. Yergin described Defendant as a boarder, she did not "spell out" for the deputies what that relationship was; (4) the term "boarder" does not necessarily imply that a person has authority over a particular room in a home; and (5) Defendant did not protest the search of his room. After reviewing the record, this Court concludes that the trial court's findings are supported by competent, credible evidence from the suppression hearing.
Although the trial court applied the appropriate law, it did not reach the proper legal conclusion. To determine if the deputies' beliefs were reasonable, this Court must determine whether the facts available to the deputies at the time of the search would "warrant a man of reasonable caution in the belief" that Ms. Yergin had authority over the premises. See Rodriguez,497 U.S. at 188-189, 111 L.Ed.2d at 161. This Court concludes that the facts available to the deputies who performed the search were not sufficient to warrant a reasonable belief that Ms. Yergin had authority to consent to a search of Defendant's room.
The deputies were aware that Defendant was a boarder in the home and that a warrant would be necessary to search a rented room. The trial court incorrectly placed the burden of explaining the effect of having boarders in her home on Ms. Yergin. As previously noted, the trial court found that although she informed the deputies that Defendant was a boarder in her home, she did not define what the term boarder meant. Apparently, the trial court expected Ms. Yergin to know that the deputies did not understand what she meant by the term boarder. It appears as if the trial court validated the search because Ms. Yergin failed to explain to the deputies that Defendant was paying her rent in exchange for room and board and that she did not, therefore, have the authority to consent to a search of his room because he had a reasonable expectation of privacy in his bedroom.
On the contrary, police officers are required to make a factual determination as to whether the person giving them consent to enter actually has authority to grant consent. State v. Simon
(1997), 119 Ohio App.3d 484, 488. Prior to performing the search, the deputies were aware that Defendant was a boarder or renter in Ms. Yergin's home. Deputy Siebert informed Deputy Whitacre that, if there was a renter in the home, the deputies would need a search warrant to search his room. If the deputies were unsure of what Ms. Yergin meant by the term boarder, they should have inquired further. The deputies did not inquire into Defendant's status in the home, despite several opportunities to do so. For example, they could have asked Ms. Yergin to explain at the police station when she signed the consent form, or they could have questioned Defendant at Ms. Yergin's home before searching his room. Although, Rodriguez applies to validate a search where a police officer would have had valid consent if the facts were as the officer reasonably believed them to be,Rodriguez does not validate a search premised upon an erroneous view of the law. United States v. Brown (C.A.2, 1992),961 F.2d 1039, 1041. "For example, an investigator's erroneous belief that landladies are generally authorized to consent to a search of a tenant's premises could not provide the authorization necessary for a warrantless search." Id.
The facts available to the deputies at the time of the search indicated that Defendant had a significant privacy interest in the place to be searched: he was a boarder in the home, he was an adult, the place to be searched was his personal bedroom, the room contained his belongings, the room was separated from the rest of the home, and there was no evidence that Ms. Yergin used or had mutual access to the room. Further, Deputy Whitacre was informed, prior to the search, that a search warrant would be necessary to search a rented room. In this case, the deputies apparently believed that, because Ms. Yergin owned the home, she had the authority to consent to a search of the entire home regardless of the presence of boarders or renters. The deputies' belief that Ms. Yergin had authority to consent was based on an erroneous view of the law. See, State v. Williams (1995), 101 Ohio App.3d 340,345.
Accordingly, the officer's warrantless entry into defendant's bedroom based on the facts available to them was unreasonable, and therefore, unlawful. Because the deputies were not lawfully present in Defendant's room, the canine-sniff constituted an unlawful search. As a result, the evidence obtained from the search should have been suppressed. Failure to suppress the evidence in this case would ratify the negligence of the deputies. Further, suppression of the evidence in this case promotes the deterrent purpose of the exclusionary rule.
Additionally, the State has asserted that Defendant failed to object to the search; therefore, Defendant consented to the search. This argument is also without merit. The evidence presented at the hearing clearly established that, from where the deputies told Defendant to sit, he was not in a position to see the deputies entering his room to perform a search. Further, the deputies never informed him that they were searching his room. Failure to resist a search does not result in consent. See, Copp,64 Ohio App.3d at 498-99 (holding that the fact that the officer was asked in, not told to stop his search when he announced that he was going to do so, nor asked for a warrant did not ipso facto
indicate that the officer was in a place where he had a right to be).
 A search based upon consent * * * constitutes a waiver of one's Fourth Amendment rights and therefore requires more than a mere expression of approval; it must be demonstrated that consent to search was freely and voluntarily given under the totality of all the surrounding circumstances.
State v. Williamson (May 25, 1990), Wood App. No. WD-89-23, unreported, 1990 Ohio App. LEXIS 2017, at *9, citing UnitedStates v. Jones (C.A.6, 1981), 641 F.2d 425, 429. It is difficult for this Court to conclude that Defendant could have freely and voluntarily consented to a search of his room under these circumstances. The State failed to present evidence to justify a finding of a valid consent to search by Defendant.
Finally, the State has attempted to argue that, by opening the safe without being told to do so, Defendant consented to the search of the safe. The illegal search of Defendant's room, however, tainted the subsequent seizure of the evidence from the safe in his room. Under the exclusionary rule, all evidence found as a result of an illegal search is excluded. State v. Hood (Dec. 10, 1993), Wood App. No. 93WD025, unreported, 1993 Ohio App. LEXIS 5908, at *10. Any secondary or derivative evidence found indirectly as a result of the illegal search is also excluded.Id. Regardless of the fact that Defendant opened the safe for the deputies, the deputies found the safe while performing an illegal search of Defendant's room. Accordingly, the evidence found in the safe should have been excluded. See Simon,119 Ohio App.3d at 488-89 (holding that, because the deputies illegally entered the defendant's apartment while attempting to execute a warrant, the trial court correctly suppressed the evidence recovered as a result of the search). Defendant's assignment of error is sustained.
 III.
Defendant's assignment of error is sustained. The judgment of the trial court is reversed, and this case is remanded for further proceedings consistent with this opinion.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellee.
Exceptions.
 __________________ BETH WHITMORE
BAIRD, P.J., CARR, J., CONCUR.