JOURNAL ENTRY AND OPINION
{¶ 1} Defendant Tracy Brassfield appeals from his conviction for possession of more than five but less than twenty kilos of marijuana, trafficking in more than five but less than twenty kilos of marijuana, falsification, and possession of criminal tools. For the reasons set forth below, we affirm defendant's conviction, vacate his sentence and remand the matter for re-sentencing.
 {¶ 2} On August 8, 2002, defendant was indicted pursuant to a five count indictment which charged him with possession of more than twenty thousand grams of marijuana, trafficking in more than twenty thousand grams of marijuana, tampering with evidence, falsification and possession of criminal tools. Defendant pleaded not guilty and attorney Larry Zukerman was assigned to represent him.
 {¶ 3} The record further reflects that on December 3, 2002, Zukerman was granted leave to withdraw as defendant's counsel due to irreconcilable differences, and the public defender was assigned to represent defendant. Attorney David King of the Public Defender's office subsequently represented defendant and filed, inter alia, a motion for independent weighing and laboratory analysis of the substances seized in this matter. The trial court granted this motion.
 {¶ 4} On May 8, 2002, the trial court granted attorney David King leave to withdraw as defendant's counsel, then appointed attorney Charles Webster to represent defendant. At this time, the trial court admonished defendant as follows:
 {¶ 5} "Look, this is your third lawyer. * * * I am not going to continue doing this. I am going to assign Charles Webster to represent you. I am going to let Mr. King withdraw here. And you will receive no other lawyer. Even without any indication here about problems that you may have with a lawyer or whatever, this is your last lawyer. * * * [T]his case is not going to get continued. I am going to set it for trial." (Tr. 8-9).
 {¶ 6} On July 2, 2002, defendant filed a motion to disqualify Webster in which he complained that Webster had requested a continuance at defendant's request and had not conscientiously represented defendant's interests. In pretrial proceedings held on July 7, 2003, defendant claimed that Webster could no longer represent him because he had filed a lawsuit against Webster. Defendant produced no complaint or other evidence to substantiate this claim, however, and the trial court refused to disqualify Webster.
 {¶ 7} On July 8, 2002, Webster filed a motion to suppress the state's evidence on the basis that it was obtained as the result of an unconstitutional search and seizure of the car which defendant was driving. The trial court held an evidentiary hearing on the motion and the state presented the testimony of the arresting officer, State Trooper Dan Joran Cottom.
 {¶ 8} Trooper Cottom testified that he patrols interstates and state routes throughout the state and investigates motor vehicle accidents. On June 16, 2002, he was assigned to traffic enforcement at the Medina Post. He was authorized to travel as far north as Brookpark at Interstate 71. Trooper Cottom testified that at approximately 1:10 a.m., he observed a 1997 Ford Expedition traveling at a high rate of speed. He used laser equipment and determined that the vehicle was going 75 m.p.h. in a 60 m.p.h. zone. Trooper Cottom then stopped the vehicle, which was driven by defendant.
 {¶ 9} Defendant talked on a cell phone during the stop and handed the trooper a Georgia driver's license in the name of "Toni James." The license was in extremely poor condition and appeared to be altered or fictitious. Trooper Cottom was unsure whether defendant was a man or woman. He checked the license and learned that it was not on file in the database. He then called the Middleburg Heights Police and requested their book which lists valid state licenses. Defendant said that his cousin Tawana Austin owned the car. He did not know Austin's phone number and told Trooper Cottom to call his uncle, who he knew as "Li'l Man." Defendant then told Cottom that his name was Ramona Lairity. Trooper Cottom determined, however, that defendant did not fit the correct physical description for Lairity. Defendant said that he was going to Euclid but was vague as to his destination.
 {¶ 10} Trooper Cottom called for assistance from the canine unit of the Strongsville Police Department. Approximately twenty minutes after the initial stop, the unit arrived, and Kessy, the unit's drug-sniffing dog alerted or notified the officers of the presence of drugs and kept going under the vehicle. Defendant was then brought to the post and gave his correct name while he was being fingerprinted.
 {¶ 11} On cross-examination, Trooper Cottom admitted that he had been a trooper for less than three years and was in training for a portion of that time. He also admitted that there is no paper printout from the laser speed indicator.
 {¶ 12} The trial court denied the motion to suppress and the matter proceeded to trial on the merits before the court.
 {¶ 13} For its case, the state presented the testimony of Trooper Cottom, Ohio State Patrol Sgt. Matthew Whitmer, Strongsville Police Officer Derek Feierbend, and Ohio State Patrol Criminalist Heather Collins.
 {¶ 14} Trooper Cottom reiterated the circumstances surrounding his stopping of the vehicle for speeding, defendant's production of a Georgia driver's license which was in poor condition and not file, defendant providing a false name and false social security number, the arrival of the canine unit, the dog's alert, the observance of marks on the gas tank of the vehicle. He further testified that the vehicle was jacked up at the trooper's post and the officers then observed that approximately one-third of the gas tank was sealed off and four large bundles, wrapped in cellophane, coffee grounds and oil were concealed in the area of the tank. In the passenger compartment of the vehicle the officers found a Texas lottery ticket, a receipt for the payment of a cell phone bill, a card with street directions and other miscellaneous items.
 {¶ 15} On cross-examination, Trooper Cottom admitted that he did not investigate the matter to determine whether defendant's cousin actually owned the drugs, he found no tools which could be used to modify the fuel tank, and that he initially believed that defendant was a woman but later learned that he is a man.
 {¶ 16} Sgt. Whitmer testified that he arrived at the trooper post and observed that the fuel tank of the vehicle had scratch marks and was loose. When the officers dropped the tank, they observed that the tank had been modified and several packages wrapped in duct tape and cellophane were in the modified portion of the tank. A small portion tested positive for THC,[1]
the active ingredient in marijuana. Whitmer photographed the bundles and secured them in the evidence locker.
 {¶ 17} On cross-examination, he admitted that he did not handle the substance to determine whether it was moist or dry. He also admitted that it appeared that one of the bundles had been cut or torn then closed over with tape. He stated, however, that the State Trooper Evidence Laboratory would not accept the evidence if it had been open when it arrived.
 {¶ 18} Patrolman Feirerbend testified that he has been a police officer with the Strongsville Police Department's Canine Unit for over seven years, and his dog is Kessy. Kessy is trained to bark or scratch where she smells drugs. She was originally trained in Czechoslovakia, is certified annually and undergoes continuous training every other Tuesday.
 {¶ 19} Officer Feierbend further testified that he arrived seven minutes after being called to the scene. Defendant was the driver of the car. Kessy banged her muzzle against the gas tank, and he then observed that the tank had been scratched. When he touched the tank, it moved and was not securely anchored to the car. Feierbend then arranged to compare the vehicle to a similar Ford car and observed that part of the tank appeared to be missing.
 {¶ 20} On cross-examination, he stated that the dog can smell drugs through wrappings and coffee grounds, but he admitted that he does not maintain records recording her performance.
 {¶ 21} Heather Collins testified that she has a bachelor of science degree in forensic science, was a forensic chemist in New Mexico before working for the State Highway Patrol, and has been recognized as an expert in Ohio courts.
 {¶ 22} Collins stated that she received the evidence obtained in this case and observed that it was wrapped plant material. The material tested positive for marijuana. One bundle actually consisted of two separate bundles which weighed 7,053.36 grams and 6,985.32 grams, respectively, one bundle weighed 5057.55 grams, and two bundles weighed 498.95 grams. The total weights therefore exceeded 20,000 grams.
 {¶ 23} Defendant elected to present evidence. He testified on his own behalf and also presented testimony from an independent forensic scientist, Larry Dehumas.
 {¶ 24} Defendant testified that he had been convicted of eight or nine previous offenses. He stated that his sex is male but his mental orientation is female. He worked as an escort and a fashion stylist. He had been staying with his cousin Tawana in Houston then he was asked by a friend to help a fashionably challenged rapper prepare for a television appearance in New York. He stated that he had used his cousin's vehicle on previous occasions but in this instance, he did not have her explicit permission to use her car.
 {¶ 25} Defendant stated that he drove around the Dallas area for two hours then while en route to New York, got a telephone call from someone who requested his services as an escort.
 {¶ 26} He admitted that he produced a false driver's license for Trooper Cottom. He also admitted that, while he was driving the car, he realized that there was a problem with the gas mileage and he was going to have a mechanic look at it in Texas, but it took too long. He did not know that drugs were in the car.
 {¶ 27} On cross-examination, he admitted that he told Trooper a number of lies, including giving a false name, and social security number.
 {¶ 28} Larry Dehumas testified that he weighed the vegetable matter recovered in this matter and determined that it weighed 18, 382 grams. He stated that the material had not continued to dehydrate after it was initially confiscated because it is dried during the processing. He stated that it would be impossible to determine whether the material would become heavier or lighter over time without knowing the environment in which it was held.
 {¶ 29} At the close of the evidence, the court convicted defendant of the lesser offense of possession of more than five but less than twenty kilos of marijuana, trafficking in more than five but less than twenty kilos of marijuana, falsification, and possession of criminal tools. The court acquitted defendant of the charge of tampering with evidence. The trial court subsequently sentenced defendant to a total of two years imprisonment. Defendant now appeals and assigns six errors for our review.
 {¶ 30} Defendant's first assignment of error states:
 {¶ 31} "Defendant was denied due process of law when the court overruled defendant's motion to suppress."
 {¶ 32} Within this assignment of error, defendant asserts that he "had a valid license and all other valid information." Appellant's Brief at 13. He further asserts that if suspicion arose in connection with the stop of his vehicle, Trooper Cottom was required to obtain a search warrant. We do not agree.
 {¶ 33} Appellate review of a trial court's ruling on a motion to suppress presents mixed questions of law and fact. See Statev. McNamara (1997), 124 Ohio App.3d 706, 710, 707 N.E.2d 539. An appellate court is to accept the trial court's factual findings unless they are "clearly erroneous." State v. Long (1998),127 Ohio App.3d 328, 332, 713 N.E.2d 1. We are therefore required to accept the factual determinations of a trial court if they are supported by competent and credible evidence. State v. Harris
(1994), 98 Ohio App.3d 543, 546, 649 N.E.2d 7. The application of the law to those facts, however, is then subject to de novo review. Id.
 {¶ 34} The principles announced in Terry v. Ohio (1968),392 U.S. 1, 20 L.Ed.2d 889, 88 S.Ct. 1868, are applied in order to determine police engaged in reasonable conduct in making a traffic stop. Berkemer v. McCarty (1984), 468 U.S. 420, 439,82 L.Ed.2d 317, 104 S.Ct. 3138; United States v. Hill,195 F.3d 258 (6th Cir. 1999); United States v. Bailey, 302 F.3d 652 (6th Cir. 2002); State v. Scalmato, Cuyahoga App. No. 82576, 2003-Ohio-6617.
 {¶ 35} Under Terry, a law enforcement officer may briefly stop and detain an individual for investigative purposes if he has a reasonable suspicion supported by articulable facts that "criminal activity may be afoot." Terry v. Ohio,392 U.S. at 30, 20 L.Ed.2d 911, 88 S.Ct. 1885; accord United States v.Sokolow, (1989), 490 U.S. 1, 7, 104 L.Ed.2d 1, 109 S.Ct. 1581.
 {¶ 36} We evaluate the legitimacy of Terry stops by engaging in a two-part analysis of the reasonableness of the stop. First, we must determine "whether there was a proper basis for the stop, which is judged by examining whether the law enforcement officials were aware of specific and articulable facts which gave rise to reasonable suspicion." United States v.Garza, 10 F.3d 1241, 1245 (6th Cir. 1993); United States v.Hardnett, 804 F.2d 353, 356 (6th Cir. 1986), cert. denied,479 U.S. 1097, 94 L.Ed.2d 171, 107 S.Ct. 1318 (1987). Second, we decide "whether the degree of intrusion into the suspect's personal security was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances." Id.
 {¶ 37} In this instance, we conclude that the stop of the vehicle was reasonable. First, there was a proper basis for the stop because Trooper Cottom established that by using a laser device, he determined that defendant was traveling 75 m.p.h. in a 60 m.p.h. zone. Accord State v. Carlson (1995),102 Ohio App.3d 585, 594, 657 N.E.2d 591. Second, the degree of intrusion into the suspect's personal security was reasonably related in scope to the situation at hand, because, following the valid stop, defendant produced a Georgia driver's license in the name of Toni James which was in extremely poor condition and appeared to have been altered. Dispatch subsequently apprised Cottom that this license was not on file with the Georgia authorities, and Trooper Cottom was unsure of defendant's gender. Defendant then gave Cottom a social security number which was admittedly false. Defendant also stated that the car belonged to his cousin but he did not have the cousin's telephone number and asked Trooper Cottom to contact his uncle, whom defendant knew only as "Li'l Man." Defendant then claimed to be Ramona Lairity from Florida, but Trooper Cottom determined that defendant did not match the physical description of this individual. From these circumstances, Trooper Cottom had articulable and reasonable suspicion and he contacted the Strongsville Police department and asked for assistance from the canine unit. The unit arrived promptly, approximately twenty minutes later, and the dog then alerted, or signaled for the presence of drugs.
 {¶ 38} Further, the use of the trained dog to sniff the car driven by defendant was not a search under the Constitution of the United States or under the Constitution of the State of Ohio. See United States v. Place (1983), 462 U.S. 696, 707,77 L.Ed.2d 110, 120-121, 103 S.Ct. 2637; State v. Palicki (1994),97 Ohio App.3d 175, 180, 646 N.E.2d 494; State v. Riley (1993),88 Ohio App.3d 468, 475, 624 N.E.2d 302; State v. Palicki (1994),97 Ohio App.3d 175, 180, 646 N.E.2d 494. "[T]he use of a dog inside a car to sniff the interior is `no more intrusive than the use of [a] dog to sniff the outside of the car,' because a dog is able to smell the presence of contraband without disturbing the possessions of the car's owner and occupants." State v. Napier,
(May 27, 1998), Medina App. No. 2671-M, unreported, quotingState v. Palicki, supra.
 {¶ 39} In accordance with the foregoing, we conclude that the trial court properly denied defendant's motion to suppress. The first assignment of error is without merit.
 {¶ 40} Defendant's second assignment of error states:
 {¶ 41} "Defendant was denied due process of law when the court ruled that the removal and dismantling of the fuel tank without a warrant was constitutional."
 {¶ 42} Within this assignment of error, defendant contends that the state troopers engaged in an unconstitutional search and seizure when it dismantled his gas tank and determined that it had been modified and was concealing storage of marijuana.
 {¶ 43} In United States v. Ross (1982), 456 U.S. 798, 825,72 L.Ed.2d 572, 102 S.Ct. 2157, the Supreme Court of the United States held "if probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." It is well-settled that once a drug-sniffing police dog alerts to the presence of contraband, probable cause exists for a further search of the vehicle. State v. Carlson (1995),102 Ohio App.3d 585, 657 N.E.2d 591; State v. Waldroup (1995),100 Ohio App.3d 508, 654 N.E.2d 390; State v. Palicki (1994),97 Ohio App.3d 175, 646 N.E.2d 494; State v. French (1995),104 Ohio App.3d 740, 749, 663 N.E.2d 367. Further, in United Statesv. Harris (Aug. 30, 1994), Case No. 3:93CR758, the United States District Court for the Northern District stated as follows:
 {¶ 44} "The defendants contend that the removal and search of the gas tank exceeded the reasonable scope of the consent that had been given initially. If so, that fact is immaterial: before the tank was removed, searched, and found to contain fifteen kilograms of cocaine, the Troopers had ample probable cause to believe that it was concealing narcotics. In addition to the dog's alert, which provided, without more, probable cause, UnitedStates v. Diaz, 25 F.3d 392, 394 (6th Cir. 1994) (positive alert by a properly trained dog suffices to establish probable cause), the alert was corroborated by the Trooper's observations of the apparent tampering with the tank and detection of the odor of marijuana. At that point, the vehicle, including the gas tank, could be searched under the automobile exception to the warrant requirement."
 {¶ 45} In this matter, Trooper Cottom testified that he arrested defendant because defendant gave him an invalid driver's license, then gave him a false social security number, followed by a false name, provided a suspicious story about a cousin who had authorized him to use the vehicle, and because while he was still trying unsuccessfully to determine defendant's true identity, the drug-sniffing dog alerted for the presence of drugs, and he then observed tool marks on the gas tank of the vehicle. The foregoing constitutes ample probable cause to search the vehicle, and its gas tank area, for evidence. In addition, even assuming that the officer lacked probable cause, the evidence would have been inevitably discovered during the course of a lawful investigation. State v. Perkins (1985),18 Ohio St.3d 193, 259, 480 N.E.2d 763, syllabus.
 {¶ 46} The second assignment of error is without merit.
 {¶ 47} Defendant's third assignment of error states:
 {¶ 48} "Defendant was denied his right to counsel by reason of the late appointment of counsel which resulted in a constructive denial of counsel."
 {¶ 49} Within this assignment of error, defendant asserts that the trial court committed reversible error in refusing to appoint different counsel to represent him after he complained to the court that Attorney Webster was appointed only two months before trial, did not prepare a defense, and had a fundamental conflict because, defendant claims, defendant filed suit against him.
 {¶ 50} In evaluating the merit of this assignment of error, we note that "[i]t is a basic due process right and indeed essential to a fair trial that a defense counsel be afforded the reasonable opportunity to prepare his case. See White v. Ragen
(1945), 324 U.S. 760, 764, 89 L.Ed. 1348, 65 S.Ct. 978; Powellv. Alabama (1932), 287 U.S. 45, 77 L.Ed. 158, 53 S.Ct. 55. Two months has been deemed sufficient to prepare a defense in non-death penalty cases, however. See, e.g., State v. Parker,
Montgomery App. No. 18926, 2002-Ohio-3920; State v. Brown (Jan. 15, 1993), Lucas App. No. L-91-406.
 {¶ 51} We further note that the determination whether or not to grant a continuance lies within the sound discretion of the trial court and will not be reversed absent a showing that the decision was arbitrary, unreasonable, or unconscionable. Statev. Grant, 67 Ohio St.3d 465, 479, 1993-Ohio-171, 620 N.E.2d 50;State v. Unger (1981), 67 Ohio St.2d 65, 67, 21 Ohio Op.3d 41,423 N.E.2d 1078. "In evaluating a motion for continuance, a court should note, inter alia: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to the litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case." Id. at 68.
 {¶ 52} Moreover, "a defendant may not be permitted to be reasonably perceived as taking advantage of the trial court by claiming his right to counsel in order to frustrate or delay the judicial process." State v. Hook (1986), 33 Ohio App.3d 101,104, 514 N.E.2d 721.
 {¶ 53} Turning to the question of whether the trial court erred in failing to allow defendant to discharge the court appointed counsel, we note that in order to discharge a court-appointed attorney, the defendant must show a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel. State v. Coleman (1988), 37 Ohio St.3d 286,525 N.E.2d 792, paragraph four of the syllabus.
 {¶ 54} Applying all of the foregoing, we note that Attorney Webster had two months to prepare a defense in this matter, and that discovery had been provided prior to that time, and an expert report challenging the weight of the evidence had been prepared. At no time did Webster complain that he had insufficient time to prepare. Although defendant asserted that "This man has no intention of winning this case for me," (Tr. 25), Webster put on a vigorous defense and succeeded in obtaining an acquittal on one of the charges and conviction for lesser offenses on two others. We therefore cannot conclude that Webster was denied a reasonable opportunity to prepare his case. Further, the record suggests that defendant had difficulty in dealing with attorneys assigned to represent him and the trial court admonished him to "Start working with your lawyer." (Tr. 27). He clearly contributed to his claimed difficulties and further discharge of counsel would have frustrated and/or delayed the judicial process. Finally, although defendant claimed that there had been a breakdown in the attorney-client relationship because he had sued Webster and they were "in litigation" (Tr. 24), Webster did not corroborate this claim, no documentary evidence was offered in support of it at any phase of these proceedings.
 {¶ 55} For all of the foregoing reasons, no breakdown in the adversarial process was established, counsel had reasonable time to prepare and did provide an effective defense, and the trial court did not err in refusing to continue the matter so that a fourth attorney could be appointed to represent defendant. This assignment of error is without merit.
 {¶ 56} Defendant's fourth assignment of error states:
 {¶ 57} "Defendant was denied due process of law when the court took judicial notice of gas mileage."
 {¶ 58} "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Evid.R. 201(B). However, the fact finder may draw reasonable inferences from facts in evidence and, further, may draw an inference in part from those same facts and from common human experience without impermissibly stacking an inference upon an inference. MotoristsMut. Ins. Co. v. Hamilton Twp. Trustees (1986),28 Ohio St.3d 13, 28 OBR 77, 502 N.E.2d 204, syllabus Evid.R. 201(B).
 {¶ 59} In this matter, the state asked the trial court to take judicial notice of the gas mileage of a 1997 Ford Expedition in order to demonstrate that defendant would have had to fill the tank frequently during the trip from Texas to Ohio, thereby tending to show that he knew that the gas tank had been modified to conceal drugs. The trial court stated that it would defer its ruling on whether it would take judicial notice of the proper mileage of the vehicle. Thereafter, defendant testified that he thought that the tank had a leak and that his fill-ups were limited to twelve gallons. He further testified that he intended to have a mechanic look at the gas tank but ultimately did not do so because it would have taken too long. (Tr. 326-328). In accordance with the foregoing, we conclude that defendant admitted that he knew that the vehicle was not getting proper gas mileage and any error in connection with the court's consideration of proper gas mileage for the vehicle was therefore harmless beyond a reasonable doubt. Crim.R. 52(A); State v.Brown, 65 Ohio St.3d 483, 485, 1992-Ohio-61, 605 N.E.2d 46.
 {¶ 60} This assignment of error is without merit.
 {¶ 61} Defendant's fifth assignment of error states:
 {¶ 62} "Defendant was denied due process of law when the court overruled her motion for judgment of acquittal."
 {¶ 63} Within this assignment of error, defendant asserts that the state failed to prove that he "knowingly" possessed the drugs found in the vehicle.
 {¶ 64} Crim.R. 29 provides:
 {¶ 65} "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."
 {¶ 66} A motion for acquittal pursuant to Crim.R. 29 is, in essence, a claim of insufficient evidence. When reviewing a challenge to the sufficiency of the evidence, an appellate court must view the evidence in a light most favorable to the prosecution and determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, at paragraph two of the syllabus, citing Jackson v.Virginia (1979), 443 U.S. 307, 61 L.Ed.2d 560, 99 S.Ct. 2781. Thus a reviewing court will not overturn a conviction for insufficiency of the evidence unless we find that reasonable minds could not reach the conclusion reached by the trier of fact. State v. Treesh, 90 Ohio St.3d 460, 2001-Ohio-4,739 N.E.2d 749.
 {¶ 67} R.C. 2925.11(A), possession of drugs, provides that "no person shall knowingly obtain, possess, or use a controlled substance." R.C. 2901.22(B) provides that "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." "Possess" or "possession" is defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). R.C. 2901.21
provides the requirements for criminal liability and provides that possession is a "voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for sufficient time to have ended possession." R.C. 2901.21(D)(1).
 {¶ 68} In this matter, defendant provided a sketchy and contradictory explanation of how he came into possession of the vehicle, and had incomplete information regarding the manner in which the true owner of the car could be contacted, had false identification and repeatedly provided false information to Trooper Cottom, was speeding through the area, could not clearly describe where he was going, and drove a great distance in a vehicle with an extremely limited fuel capacity. Viewing the evidence in a light most favorable to the prosecution, reasonable minds can reach different conclusions as to whether defendant was in knowing possession of the drugs. The trial court therefor did not err in denying a motion for a judgment of acquittal as to the charge.
 {¶ 69} Defendant's sixth assignment of error states:
 {¶ 70} "Defendant was denied due process of law when the court did not sentence defendant to a minimum sentence."
 {¶ 71} Within this assignment of error, defendant contends that while he had other prior convictions, he" was not shown to have been sentenced to prison previously," and the trial court was therefore required to sentence him to the minimum term of incarceration. During oral argument on this matter, the state conceded that defendant had not previously been sentenced to imprisonment. Accordingly, we will conclude that this assignment of error is well-taken. We hereby vacate the sentence imposed and remand for re-sentencing.
 {¶ 72} This matter is affirmed in part, the sentence imposed by the trial court is vacated, and the matter is remanded for re-sentencing.
Corrigan, A.J., and Gallagher, J., concur.
It is ordered that appellant and appellee share equally the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for re-sentencing.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] THC is an acronym for Tetrahydrocannabinol. See UnitedStates v. Turbyfill, No. 89-1876, (6th. Cir. August 30, 1990), Reported as Table Case at 914 F.2d 259; 1990 U.S. App. LEXIS 24434.