FILED
United States Court of Appeals
Tenth Circuit

May 7, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

       Plaintiff-Appellee,

v.

BRENDA SEYBELS,

       Defendant-Appellant.

No. 12-4130
(D.C. No. 2:11-CR-00208-TC-2)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, Circuit Judge, **PORFILIO**, Senior Circuit Judge, and **HOLMES**, Circuit Judge.

Defendant Brenda Seybels appeals the district court's denial of a motion to suppress evidence relating to a large quantity of methamphetamine found in her car after a police dog alerted to the presence of drugs during a traffic stop. Her challenge to this ruling was preserved in a conditional guilty plea of possessing with intent to distribute the methamphetamine. We affirm for the reasons explained below.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I. LEGAL FRAMEWORK

The basic constitutional analysis of traffic stops is well-established:

> For Fourth Amendment purposes, the legality of a traffic stop is assessed pursuant to the framework established in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L.Ed.2d 889 (1968). Accordingly, we proceed in two steps. First, we question whether the traffic stop was justified at its inception. Second, if the stop was justified, we determine whether the resulting detention was reasonably related in scope to the circumstances that justified the stop in the first place.

*United States v. Polly*, 630 F.3d 991, 997 (10th Cir. 2011) (internal quotation marks, alterations, and additional citations omitted). The second step of the inquiry, which will be our focus here, is driven primarily by the purpose of the initial stop:

> [T]he investigative detention usually must last no longer than is necessary to effectuate the purpose of the stop, and the scope of the detention must be carefully tailored to its underlying justification. In accordance with these principles, . . . a law enforcement officer conducting a traffic stop may generally request a driver's license, registration, and other required papers, run requisite computer checks, and issue citations or warnings as appropriate. In addition, an officer may ask questions, whether or not related to the purpose of the traffic stop, if they do not excessively prolong the stop. However, once an officer returns the driver's license and registration, the traffic stop has ended and questioning must cease; at that point, the driver must be free to leave.

*United States v. Kitchell*, 653 F.3d 1206, 1217 (10th Cir.) (internal quotation marks and citations omitted), *cert. denied*, 132 S. Ct. 435 (2011). But "a traffic stop may be expanded beyond its original purpose if during the initial stop the detaining officer acquires reasonable suspicion of [other] criminal activity[.]" *Id.* In that regard,

> [t]o determine whether an officer has reasonable suspicion to detain beyond the scope of the traffic stop, we must look at the totality of the circumstances of each case to see whether the detaining officer has a

- 2 -

particularized and objective basis for suspecting legal wrongdoing. Although the government bears the burden of proving the reasonableness of an officer's suspicion, reasonable suspicion is not, and is not meant to be, an onerous standard. While reasonable suspicion cannot be based upon a mere hunch, it also need not rise to the level required for probable cause. . . . Indeed, a factor may raise objectively reasonable suspicions even if it is not by itself proof of any illegal conduct and is quite consistent with innocent travel.

*Id.* at 1218-19 (internal quotation marks, alterations, and citations omitted).

In applying these principles in a particular case, this court "accepts the factual findings of the district court, and its determinations of witness credibility, unless they are clearly erroneous." *Id.* at 1215. We also view the evidence in a light most favorable to the government. *Id.* at 1216 (internal quotation marks omitted). "Ultimately, however, this court must review de novo the reasonableness of the government's action under the Fourth Amendment." *Id.* (internal quotation marks omitted).

## II. THE TRAFFIC STOP

On the afternoon of March 8, 2011, Ms. Seybels and Colene Hageman were traveling eastbound through Utah on Interstate 70 in a Chevrolet Impala driven by Ms. Hageman. Sergeant Steve Salas of the Utah Highway Patrol stopped the car for speeding and for having an illegal window tint. Ms. Seybels does not challenge the grounds for this stop; she challenges only its duration and scope.

Sergeant Salas requested Ms. Hageman's driver's license and asked where the two women were coming from. Ms. Hageman gave him her license and said they had been to California to visit her passenger's family. Sergeant Salas also requested the

- 3 -

vehicle registration and proof of insurance. Ms. Seybels, the owner, said she had just purchased the car the preceding Friday (March 4) and had not yet registered it, explaining that she had wanted to visit her father in California. But she gave Sergeant Salas the title and an insurance card, as well as her own driver's license for identification. The title and insurance card both matched the vehicle, but the title listed Crystal Gallegos as owner. Although Ms. Gallegos had signed the back of the title as required for a sale, purchase information including the price and buyer was not filled in. Nor did Ms. Seybels have a bill of sale. Sergeant Salas asked her to accompany him to his patrol car, since she would be responsible for the window-tint violation and because he was suspicious about the title and registration.

Sergeant Salas read through the two documents and asked Ms. Seybels about her trip and her travelling companion. She replied that the driver was a friend she had known for six months, but she only knew her first name. Turning to her purchase of the car, she said she was currently unemployed but had bought the car with a tax refund so she could visit her father, leaving for California the very next day. A sheriff's deputy arrived at the scene with a police dog, and Ms. Seybels allowed him to walk the dog around the car while Sergeant Salas began writing a warning ticket for the illegal window tint.[1] As the deputy and his dog made their way up the

---

[1]    Ms. Seybels' permission was not required, as "[i]t is well-settled that a drug dog's sniff of the outside of a car is not itself a search for Fourth Amendment purposes." *United States v. Ludwig*, 641 F.3d 1243, 1250 (10th Cir. 2011) (citing *Illinois v. Caballes*, 543 U.S. 405, 409 (2005)). The recent decision in *Florida v.*

(continued)

- 4 -

passenger side of the car, a Chihuahua jumped out of the passenger window and approached them barking. The deputy picked up the Chihuahua and returned it to the car and put his own dog away. Sergeant Salas, a narcotics canine instructor and handler himself (with his own police dog at the scene), observed that the encounter had distracted the deputy's dog.

Sergeant Salas returned to completing the warning citation for Ms. Seybels regarding the window tinting. During this time, Ms. Seybels told him she had bought the car on Friday to travel to California, because her father was having a birthday. But she also said the birthday was not until the following week, and had no answer as to why she needed to rush to California (and return after such a short visit) a week beforehand—which was significant in that she had cited that rush to explain why she had not registered the vehicle. Sergeant Salas also heard from dispatch, confirming that the car was not reported stolen but was registered to Crystal Gallegos.

We pause to note that Sergeant Salas's actions up to this point were clearly consistent with Fourth Amendment standards. First of all, Ms. Seybels was rightfully detained while Sergeant Salas "was in the process of writing the warning ticket" for the window-tint violation, and it was entirely proper to question her about her travel plans during this interval. *United States v. Villa*, 589 F.3d 1334, 1339 (10th Cir. 2009). Second, the lack of a vehicle registration and the incompleteness of the title

---

*Jardines*, 2013 WL 1196577 (U.S. Mar. 26, 2013), that entry onto a home's curtilage to conduct a dog sniff is a search, was based on property rights not implicated in the traffic stop context and, hence, did not undermine *Caballes*, *see id.* at *6.

provided objective grounds for inquiring further about ownership of the car—which Sergeant Salas did both by engaging Ms. Seybels in conversation and by asking dispatch to run a stolen-vehicle check. We have repeatedly noted a "'recurring factor supporting a finding of reasonable suspicion . . . is the inability of a defendant to provide proof that he is entitled to operate the vehicle he is driving.'" *United States v. Villa-Chaparro*, 115 F.3d 797, 802 (10th Cir. 1997) (quoting *United States v. Gonzalez-Lerma*, 14 F.3d 1479, 1484 (10th Cir. 1994)); *see also United States v. Ludwig*, 641 F.3d 1243, 1249 (10th Cir. 2011).

But Ms. Seybels contends that thereafter, once Sergeant Salas completed the warning ticket, there was no legitimate basis for detaining and questioning her any longer in light of the negative dog sniff and the response from dispatch indicating the car was not stolen, yet (while he claimed to be having trouble printing the warning) he continued to ask her questions about the purchase of the car. In particular, he asked whether someone else had bought the car for her or helped her to buy it, which she denied in a voice he described as very, very low or quiet. After printing the warning and giving it to Ms. Seybels along with her license, title, and insurance card, he asked her to remain in the patrol car while he spoke with Ms. Hageman, whom he had said would get a verbal warning for speeding. Like Ms. Seybels, Ms. Hageman did not appear to know the last name of her traveling companion—at least she said she could not pronounce or spell it. In addition, some of her answers did not match what Ms. Seybels had told Sergeant Salas, including how long the women had known

each other.  Sergeant Salas returned to the patrol car and, after a brief exchange, asked Ms. Seybels for permission to search her vehicle, which she refused.  He then brought out his own dog to conduct a second drug sniff of the car.  The dog alerted to the presence of drugs, providing probable cause for a search that ultimately led to the hidden cache of methamphetamine supporting Ms. Seybels' conviction.

## III.  REASONABLE SUSPICION FOR PROLONGED DETENTION

Ms. Seybels argues that the stop became illegal when, having completed the warning ticket, Sergeant Salas needed but lacked reasonable suspicion to detain her any longer.  We direct our reasonable-suspicion analysis accordingly, and thus do not consider information gleaned by Sergeant Salas only after his further questioning of the two suspects.

Two major premises of Ms. Seybels' argument are that the first dog sniff dissipated any reasonable suspicion of drugs being in the car and the response from dispatch dissipated any reasonable suspicion that the car was stolen.  The district court noted, however, that the probative effect of the first dog sniff was negated by the circumstances surrounding it, while the response from dispatch, though it may have reduced suspicions of car theft, did not dissipate suspicions that the vehicle was conveying contraband:

> Neither of these events was determinative [of a lack of reasonable suspicion].  First, Sergeant Salas testified that from his training and experience as a dog handler, he could tell that the first dog had been distracted by the Chihuahua.  This led him to believe that the sniff was not reliable [and hence did not dissipate reasonable suspicion about the presence of drugs].  Second, the response from dispatch did not indicate

that Ms. Seybels owned the car, only that it was registered to Crystal Gallegos and not reported stolen. Sergeant Salas testified that, in his experience, people hauling contraband are usually hired to do so and are usually given a car that is not registered in their names.

R. Vol. 1 at 222. These are matters of fact and credibility, and we see no basis for rejecting them as clearly erroneous. With this understanding of the relevance and effect of the first dog sniff and dispatch's response regarding the status of the car, we now consider de novo the overarching question whether "the totality of the circumstances" show that Sergeant Salas had "a particularized and objective basis for suspecting legal wrongdoing" when he continued to detain Ms. Seybels and her companion for questioning and to conduct the second dog sniff of the car for drugs. *Kitchell*, 653 F.3d at 1218-19 (internal quotation marks omitted).

The district court cited a number of factors supporting reasonable suspicion. We deem the following facts particularly probative. First, Ms. Seybels lacked registration and proper title to the car, which as explained by Sergeant Salas is indicative not only of potential theft but of persons hired to transport drugs. *See also Ludwig*, 641 F.3d at 1249 ("[D]riving a vehicle registered to a third party who wasn't present . . . is a factor we have often held may indicate a stolen vehicle *or drug trafficking*." (emphasis added, internal quotation marks and alterations omitted)). Second, Ms. Seybels did not even know the last name of her purported friend and travelling companion, "a circumstance that quite reasonably raised . . . a suspicion that the two [traveling companions] had not taken a vacation . . . but had come together for a brief, illegal business [i.e., drug] transaction," *United States v. Hardy*,

855 F.2d 753, 758 (11th Cir. 1988). *See also United States v. Sanchez*, 417 F.3d 971, 976 (8th Cir. 2005) (noting "fact that [defendant] did not know [her driving companion's] last name even though she claimed to have known him for almost a year" as factor supporting reasonable suspicion to support detention for drug sniff of vehicle). Third, Ms. Seybels' explanation of her travel itinerary was facially implausible. *See United States v. Davis*, 636 F.3d 1281, 1291 (10th Cir. 2011) (collecting cases holding that implausible travel plans, or implausible explanations for such plans, can contribute to reasonable suspicion).

While it is true that taken individually such facts could well be consistent with innocent activity, we have repeatedly recognized that, considered in the totality of relevant circumstances, "'[a] factor may raise objectively reasonable suspicions even if it is not by itself proof of any illegal conduct and is quite consistent with innocent travel.'" *Kitchell*, 653 F.3d at 1219 (quoting *United States v. White*, 584 F.3d 935, 950 (10th Cir. 2009) (further quotations omitted)). "[P]olice need not rule out the possibility of innocent conduct," as "[r]easonable suspicion may exist even where it might be more likely than not that the individual is *not* involved in any illegality." *United States v. Guardado*, 699 F.3d 1220, 1224 (10th Cir. 2012) (internal quotation marks omitted). And "[w]hen making our assessment [of reasonable suspicion], deference is to be accorded a law enforcement's ability to distinguish between innocent and suspicious actions." *United States v. Jones*, 701 F.3d 1300, 1316 (10th Cir. 2012) (internal quotation marks omitted). The circumstances cited above,

which collectively converge on a reasonable suspicion that Ms. Seybels was transporting drugs, justified Sergeant Salas in further detaining her for the short time it took to briefly question her companion and conduct the second, uninterrupted, dog sniff around the vehicle which resulted in the discovery of drugs. Accordingly, we conclude that her motion to suppress was properly denied.

The judgment of the district court is affirmed.

Entered for the Court


Jerome A. Holmes
Circuit Judge