[Cite as *State v. Barton*, 2025-Ohio-1904.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240427 |
| | | TRIAL NO. C/23/CRB/6070 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| DANIELLE BARTON, | : | *JUDGMENT ENTRY* |
| Defendant-Appellant. | | |

This cause was heard upon the appeal, the record, the briefs, and the arguments.

The judgment of the trial court is affirmed for the reasons set forth in the Opinion filed this date.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs are taxed under App.R. 24.

The court further orders that 1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and 2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 5/28/2025 per order of the court.**

**By:**_____
      **Administrative Judge**

[Cite as *State v. Barton*, 2025-Ohio-1904.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


STATE OF OHIO,

        Plaintiff-Appellee,

  vs.

DANIELLE BARTON,

        Defendant-Appellant.

:
:
:
:
:
:
:

APPEAL NO. C-240427
TRIAL NO. C/23/CRB/6070


*O P I N I O N*


Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: May 28, 2025


*Connie M. Pillich*, Hamilton County Prosecuting Attorney, and *Norbert Wessels*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Sarah E. Nelson*, Assistant Public Defender, for Defendant-Appellant.

**ZAYAS, Presiding Judge.**

{¶1} After pleading no contest, Danielle Barton was found guilty of possessing drug-abuse instruments. Prior to pleading no contest, Barton filed a motion to suppress the evidence found in her vehicle, arguing that the canine search of her vehicle was unconstitutional because the canine placed its head inside of her open window. After the court overruled the motion to suppress, Barton pleaded no contest to the charge. On appeal, Barton contends that the trial court erred in overruling her motion to suppress.

## Factual Background

{¶2} Following a traffic stop, Barton was charged with possessing drug-abuse instruments after a trained dog alerted on her vehicle. Barton filed a motion to suppress all evidence alleging that the drug-sniff was an unconstitutional search because the dog trespassed into her vehicle when it put its head inside of her vehicle during the sniff.

{¶3} At the hearing on the motion, the parties jointly submitted a video of the stop and entered into several stipulations. The parties agreed that Barton was subjected to a warrantless arrest. The parties also stipulated that the dog placed its head into the driver's-side window for approximately three seconds, and the dog's jump was instinctual. The final stipulation was to the statement of facts contained in Barton's motion and the State's response to the motion. To that end, both parties stipulated that after the dog jumped on the door and sniffed inside the open window, the dog alerted. The parties presented no additional evidence at the hearing. After arguments from both parties, the court continued the hearing for a decision to review the video and case law.

{¶4} The court overruled the motion, concluding that "a dog's instinctive

jump into a car does not violate the Fourth Amendment so long as the K9 enters the vehicle on its own instinctive initiative and is neither encouraged nor placed into the vehicle by law enforcement officers."

## Motion to Suppress

**{¶5}** In her first assignment of error, Barton contends that the trial court erred in overruling her motion to suppress because the dog's intrusion into her vehicle constituted a trespass for the purpose of gathering information, and therefore, was an unconstitutional search.

**{¶6}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 2003-Ohio-5372, ¶ 8. When ruling on a motion to suppress, this court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. *See id.* "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

**{¶7}** The Fourth Amendment protects individuals from unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 8-9 (1968); *State v. Polk*, 2017-Ohio-2735, ¶ 12. "[E]vidence obtained through unlawful searches and seizures is inadmissible" and thus appropriately suppressed prior to trial. *United States v. Leon*, 468 U.S. 897, 916 (1984).

**{¶8}** Although a traffic stop is a "seizure" under the Fourth Amendment, as a general rule, a canine sniff in a public place does not constitute a "search." *See State v. Lopez*, 2006-Ohio-2091, ¶ 21 (1st Dist.); *State v. Reuschling*, 2025-Ohio-516, ¶ 13 (11th Dist.); *United States v. Place*, 462 U.S. 696, 707 (1983). In *Place*, the Supreme Court held that "exposure of respondent's luggage, which was located in a public place,

4

to a trained canine -- did not constitute a 'search' within the meaning of the Fourth Amendment." *Place* at 707. In reaching this decision, the Court analyzed the issue under the expectation-of-privacy test described in *Katz v. United States*, 389 U.S. 347 (1967), that concluded that a search occurs whenever the government intrudes upon any place in which a person has a "reasonable expectation of privacy." *Id.* at 360 (Harlan, J., concurring). *See Illinois v. Caballes*, 543 U.S. 405 (2005) (The use of a drug-sniffing dog, during a lawful traffic stop, does not implicate legitimate privacy interests."). Instead, the Court described a dog sniff as "sui generis" because it "discloses only the presence or absence of narcotics, a contraband item" and "does not expose noncontraband items that otherwise would remain hidden from public view." *Id.*

**{¶9}** While *Place* involved luggage on a skybridge, after *Place,* the United States Supreme Court applied the same rationale to a vehicle. *See Caballes*. In *Caballes*, the Court held that "the use of a well-trained narcotics-detection dog--one that 'does not expose noncontraband items that otherwise would remain hidden from public view,'" --during a lawful traffic stop, generally does not implicate legitimate privacy interests." *Caballes* at 409, citing *Place*, 462 U.S. at 707. Again, the *Caballes* Court reinforced that "[o]fficial conduct that does not 'compromise any legitimate interest in privacy' is not a search subject to the Fourth Amendment. *Id.* at 408, citing *United States v. Jacobsen*, 466 U.S. 109, 123 (1984). Possessing contraband "cannot be deemed 'legitimate' and thus, governmental conduct that *only* reveals the possession of contraband 'compromises no legitimate privacy interest.'" (Emphasis in original.) *Id.* at 408-409, citing *Jacobsen* at 123. The Court reiterated its *Place* determination that a canine sniff is "sui generis" precisely "because it 'discloses only the presence or absence of narcotics, a contraband item.'"

{¶10} Barton acknowledges that until recently, courts have applied the expectation-of-privacy test to conclude that a dog sniff is not unconstitutional even where the dog, of its own volition, jumped inside the vehicle to follow the scent of drugs that it had detected. *See State v. Napier*, 1998 Ohio App. LEXIS 2466, *10 (9th Dist.) ("The use of a dog inside a car to sniff the interior is 'no more intrusive than the use of [a] dog to sniff the outside of the car,' because a dog is able to smell the presence of contraband without disturbing the possessions of the car's owner and occupants."); *State v. Brassfield*, 2004-Ohio-2412, ¶ 38 (8th Dist.).

{¶11} Barton urges this court to apply the common-law-trespass test utilized in *United States v. Jones*, 565 U.S. 400 (2012), and *Florida v Jardines*, 569 U.S. 1 (2013), and hold that the dog's physical intrusion into her vehicle constituted a trespass, for purposes of gathering information, and therefore, was an unconstitutional search.

{¶12} In *Jones*, the United States Supreme Court examined whether attaching a Global Positioning System ("GPS") device to a vehicle and using the device to monitor a vehicle's movements constituted an unconstitutional search. *Jones* at 402. The Court utilized the property-based "common-law trespassory test" to determine whether the government conducted a search under the Fourth Amendment. *Id.* at 409. The Court explained that while a trespass alone is not a "search," a trespass for the purpose of obtaining information is a search under the Fourth Amendment. *Id.* at 408. Under the trespass inquiry, placing the device on the car and using the device to monitor the vehicle's movements constituted a search because the government "physically occupied private property for the purpose of obtaining information." *Id.* at 404.

{¶13} The question in *Jardines* was "whether using a drug-sniffing dog on a

6

homeowner's porch to investigate the contents of the home is a "search" within the meaning of the Fourth Amendment." *Jardines* at 3.  After sniffing the porch and front door, the dog alerted, and a warrant was obtained to search the home.  *Id.* at 5.  The Court held that the sniff was an unconstitutional search because the officers entered the area surrounding the home to gather evidence without permission or a warrant. *Id.* at 8-11.  The Court noted "when it comes to the Fourth Amendment, the home is first among equals" and that the intrusion into the curtilage was "part of the home itself."  *Id.* at 6.  The curtilage is "intimately linked to the home, both physically and psychologically," and is where "privacy expectations are most heightened."  *Id.* at 7.

**{¶14}** The *Jardines* Court emphasized that, "It is not the dog that is the problem, but the behavior that here involved use of the dog." *Jardines*, 569 U.S. at 9, fn. 3.  The Court further explained:

> The officers were gathering information in an area belonging to Jardines and immediately surrounding his house--in the curtilage of the house, which we have held enjoys protection as part of the home itself. And they gathered that information by physically entering and occupying the area to engage in conduct not explicitly or implicitly permitted by the homeowner.

*Id.* at 5-6.

**{¶15}** The Court held that "[t]he Government's use of trained police dogs to investigate the home and its immediate surroundings is a 'search' within the meaning of the Fourth Amendment." *Id.* at 11-12.  Thus, the holding in *Jardines* was limited to searches involving the home.  *Id.*  Moreover, the concurring opinion reiterated that "in a case involving a search of a home, property concepts and privacy concepts should so align," *id.* at 14, and further distinguished the use of the trespass theory in this case

7

from *Cabelles*, which involved a "dog's sniff of an automobile," *id.* at 14, fn. 1, because "people's expectations of privacy are much lower in their cars than in their homes." *Id.*

**{¶16}** Barton further relies on two Idaho Supreme Court cases that held a dog's sniff of a car constituted a trespass to obtain information about the presence of drugs in violation of the Fourth Amendment. In *State v. Randall*, 169 Idaho 358 (2021), the court recognized that a dog's intrusion into a vehicle "may not be at the specific direction of officers." *Id.* at 369. Nevertheless, "law enforcement is wholly responsible for the training and deployment of drug dogs; it is likewise wholly responsible when, as a result of their training and deployment, dogs enter vehicles during exterior sniffs." *Id.* Notably, the canine handler in *Randall* gave the dog a boost into the vehicle, pushing the dog fully into the car, when the dog's hindquarters caught just outside the window. *Id.* at 361. Two years later, the Idaho Supreme Court reaffirmed its *Randall* holding and expanded it to include instances where the dog "trespasses against the exterior of a vehicle during a 'free air' sniff if its physical contact with the vehicle amounts to 'intermeddling' at common law." *State v. Dorff*, 171 Idaho 818, 821 (2023). The court concluded the dog intermeddled with the car when "it jumped onto the driver side door and window, planted two of its paws, and sniffed the vehicle's upper seams." *Id.*

**{¶17}** The *Randall* dissent rejected the majority's analysis, focusing on the fact that both *Jones* and *Jardines* involved an "*officer* who intentionally trespassed to gather information, not the non-state actor drug dog." (Emphasis in original.) *Randall* at 374. When a dog acts instinctively without facilitation, prompting, or direction by the officer, the dog's action cannot be attributed to the officer. *Id.* The dissent pointed out that the purpose of the exclusionary rule is to deter future Fourth

8

Amendment violations by police misconduct. *Id.* at 373. A dog is not a state actor and has no "ill will or improper motivation that can be trained away." *Id.* An officer cannot prevent a dog from acting instinctively because a dog's instinctive response, by definition, is merely "a matter of a reaction below the conscious level." *Id.* at 375. Moreover, under *Jones*, a search occurred when the officer entered the home "for the purpose of obtaining information." *Id.* at 376. "A dog's instinctual, unaided response is distinguishable from an officer's intentional action to gain information. Thus, the critical inquiry remains whether the dog's entry was instinctual or facilitated by an officer — not whether the officer had probable cause before the dog crossed the now inviolable border of the car's door or windowsill." *Id.*

{¶18} The *Randall* dissent further noted that the majority of courts to consider the issue have recognized that when dogs act instinctively, there is no Fourth Amendment violation, even when entering a vehicle. *Id.* Numerous cases have held that "absent police misconduct, the instinctive actions of trained drug dogs do not expand the scope of an otherwise legal dog sniff to an impermissible search." *Id.* at 376. *See, e.g., United States v. Sharp*, 689 F.3d 616, 619 (6th Cir. 2012), *cert. denied*, 568 U.S. 1056 (2012) (noting that the unanimous view of the circuits considering the issue is that where a drug-detecting canine, without any command or encouragement by law enforcement, "instinctive[ly] jump[s]" into a private vehicle on its own initiative, its action does not violate the Fourth Amendment (citing decisions of the Third, Eighth, and Tenth Circuits)); *United States v. Pierce*, 622 F.3d 209, 214-215 (3d Cir. 2010) (concluding that no Fourth Amendment violation occurred when a dog jumped instinctively through an open car door "without facilitation by his handler"); *United States v. Lyons*, 486 F.3d 367, 373-374 (8th Cir. 2007) (no search when, without facilitation by police, dog's head entered window opened by passenger);

9

*United States v. Stone*, 866 F.2d 359, 364 (10th Cir. 1989) (no search when dog jumped in hatchback that was not opened to permit dog to enter and police did not encourage entry); *United States v. Hutchinson*, 471 F.Supp.2d 497, 510-511 (M.D.Pa. 2007) (no search where dog entered car window that police did not open and police did not encourage entry); *United States v. Vazquez*, 555 F.3d 923, 930 (10th Cir. 2009) (stating that "we have upheld the legality of [a dog] sniff during a lawful detention when, as here, (1) the dog's leap into the car was instinctual rather than orchestrated and (2) the officers did not ask the driver to open the point of entry . . . used by the dog").

**{¶19}** Other courts have addressed the issue of whether a dog's entry into the interior of a vehicle constituted an unconstitutional search and have come to different conclusions under a variety of rationales. *See United States v. Corbett*, 718 F.Supp.3d 537, 563 (S.D.W.Va. 2024) ("A dog sniff in which the dog trespasses onto defendant's property does not violate the Fourth Amendment when the dog's trespassory actions were instinctual, and not due to encouragement or orchestration by its handler or by officers, including, for example, opening a point of entry used by the dog."); *State v. Mumford*, 14 N.W.3d 346, 352-353 (Iowa 2024) (concluding "a drug dog's momentary breach into the cabin of a vehicle through an open window of a legally stopped vehicle" was not an unconstitutional search); *United States v. Wilson*, 2024 U.S. App. LEXIS 19424, *2 and fn.1 (5th Cir. Aug. 2, 2024) (holding that there was no search where dog instinctively entered the car without direction); *State v. McKinnon*, 2025 N.J. Super. Unpub. LEXIS 168, *17 (January 9, 2025) (finding an unconstitutional search where the officer deliberately kept the car door open).

**{¶20}** We agree with the numerous courts that have held that a dog's instinctual jump does not violate the Fourth Amendment when the jump was not

prompted by an officer or handler. To conclude otherwise here would be equating a dog's instinctive behavior to police misconduct in a situation where both parties agree that the officer did not engage in any type of misconduct.

**{¶21}** Moreover, multiple courts have rejected the application of the trespass analysis to a dog's sniff of a car as opposed to a home because the United States Supreme Court has not overruled *Caballes*. *See, e.g., United States v. Bain*, 874 F.3d 1, 15 (1st Cir. 2017) (explaining that *Jardines* was different from *Caballes* "because it concerned a house rather than an effect"); *United States v. Winters*, 782 F.3d 289, 305 (6th Cir. 2015) ("*Jardines* does not call *Caballes* and its progeny into doubt."); *United States v. Seybels*, 526 Fed. Appx. 857, 859, fn.1 (10th Cir. 2013) (noting that *Jardines* "was based on property rights not implicated in the traffic stop context and, hence, did not undermine *Caballes*."); *United States v. Lewis*, 2017 U.S. Dist. LEXIS 105628, *6 (N.D. Ind. July 10, 2017) ("*Jardines* did not purport to overrule *Caballes* and the well-settled proposition that a dog sniff is not a Fourth Amendment search. Neither has any other Supreme Court decision."); *United States v. Cordero*, 2014 U.S. Dist. LEXIS 95227, *9 (D.Vt. July 14, 2014) ("*Jardines* did not reverse the Court's decisions holding that canine sniffs during traffic stops do not implicate the Fourth Amendment . . . ."); *State v. Miller*, 367 N.C. 702, 708 (2014) ("Nonetheless, insofar as *Place*, *Edmond*, and *Caballes* encourage police to utilize dog sniffs in the public sphere, the Court's recent decision in [*Jardines*] places police on a much shorter leash when employing dog sniffs in and around the home."); *State v. Bauler*, 8 N.W.3d 892, 902 (Iowa 2024) ("If there is a tension between *Caballes* and the Supreme Court's subsequent Fourth Amendment jurisprudence as articulated in *Jones* and *Jardines*, it is, per the Supreme Court's own instruction, for the Supreme Court to resolve."). More recently, the *Bauler* Court further relied on the fact that after *Jones* and *Jardines*, the

Supreme Court applied *Caballes* to a dog sniff of a vehicle in *Rodriguez v. United States*, 575 U.S. 348, 350-351 (2015). *Bauler* at 902 fn. 1.

**{¶22}** If we were to agree with Barton, in essence, we would be rejecting long-standing state and federal precedent as applied to a dog sniff of a vehicle. We are not convinced that *Jones* or *Jardines* applies to a dog sniff of a vehicle as opposed to a home, where the United States Supreme Court did not overrule its prior precedent controlling a dog's sniff of an automobile. *See id.*

**{¶23}** In this case, the facts are undisputed that the dog briefly and instinctively placed its head into a window of the vehicle. Notably, the parties agreed[1] that the dog's jump was instinctual and thus without any facilitation, command, or encouragement by the officer. Consequently, we hold that the dog's instinctive jump that briefly breached the vehicle's window is not an unconstitutional search.

**{¶24}** We overrule Barton's sole assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**BOCK, J.,** concurs.
**MOORE, J.,** dissents.

**MOORE, J.,** dissenting.

**{¶25}** When a police dog—a dog specifically trained to sniff out illegal drugs—is deployed to the scene of a traffic stop for the purpose of performing the task it was trained to do and where upon arrival, that trained police dog is directed to perform a drug sniff of the stopped car, and where that trained police dog, after it was directed by its handler to follow its training and determine if there were illegal drugs in the car,

---

[1] Barton did not abandon the argument that the dog acted instinctively. She agreed that the jump was instinctual and not prompted by any conduct of the officer.

12

jumps into the interior of the car without probable cause, the government has conducted a search and, in the absence of facts showing the existence of any of the recognized exceptions to the probable-cause requirement, that search by the government is unconstitutional. That is what happened in this case. And, because the search was unconstitutional the evidence from that search should have been suppressed. Because it was not, I dissent.

## Introduction

**{¶26}** Nothing in the record indicates that Barton passed the bar, but she apparently knew a little bit and refused to let the officers search her car's cockpit. It was after said refusal that the officers brought in the canine perhaps to see how smart Barton actually was. It is what happened after the canine came that is the subject of this appeal.

## The Role of Instinct

**{¶27}** As the majority explained, the question of whether the dog acted instinctively or not has been abandoned below. So, that issue does not need to be addressed here. However, as the Iowa Supreme Court in *Randall* expressed, it is difficult to conceive of how a trained police dog acted instinctively when it comes to doing an act that it was specifically trained to do while under the supervision and direction of its handler. *State v. Randall*, 169 Idaho 358, 368 (2021) (concluding that the description of the dog's behavior as "instinctive" is inapt because there is nothing innate about a dog seeking out narcotics). But, because that issue was abandoned below, we will have to leave further discussion of that issue for another day and another case.

## Is there a reasonable expectation of privacy in the interior space of a vehicle?

**{¶28}** Yes.

**{¶29}** The majority argues that the privacy interest in a car is below that of a home. That is true. *See State v. Miller*, 2011-Ohio-5860, ¶ 31 (11th Dist.), quoting *California v. Carney*, 471 U.S. 386, 391-392 (1985) (an occupant of a car has a lesser expectation of privacy in the car versus in a home and no special exigency is required to conduct a warrantless search of an automobile when the searching officer has probable cause to believe that fruits of a crime may be in the car). There is no recognized protected space, i.e., curtilage, that surrounds a vehicle, as there is with a home. *See City of Indianapolis v. Edmond*, 531 U.S. 32, 40 (2000) (a "free air sniff" is "an exterior sniff of an automobile [that] does not require entry into the car," where the dog "simply walks around a car."); *Illinois v. Caballes*, 543 U.S. 405, 409 (2005) (the use of a well-trained narcotics-detection dog generally does not implicate legitimate privacy interests when the dog sniff was performed on the exterior of a car that was lawfully stopped for a traffic violation).

**{¶30}** However, the area around the car is not the issue in this case.

**{¶31}** The distinction between a police dog sniffing around the outside of a car and a police dog entering the interior of the car is a distinction with a difference. Like the interior of a house, there is a reasonable expectation of privacy with respect to the interior of a car or other vehicle. So, while the recognized privacy expectation of a car does not extend to its exterior, as with the curtilage of a home, there is an expectation of privacy for the space inside the vehicle as with the space inside of a home. *See Byrd v. United States*, 584 U.S. 395, 404 (2018) ("One who owns and possesses a car, like one who owns and possesses a house, almost always has a reasonable expectation of privacy in it.").

**{¶32}** The cases claiming that the United States Supreme Court declared that

a dog sniff of the interior of a car is not a search, go too far. *See, e.g., State v. Palicki*, 97 Ohio App.3d 175, 180-181 (6th Dist. 1994). In *Palicki*, the reviewing court concluded that the officer had probable cause to search the interior of the car because the narcotics dog alerted that illegal drugs may be present while it performed an exterior sniff. *Id.* at 181. The court cited *United States v. Place*, 462 U.S. 696, 707 (1983), to support its assertion that the "Supreme Court of the United States has stated that a dog sniff is not a search under the federal Constitution." *Id.* However, this extends the holding in *Place* beyond its intended reach.

{¶33} The Court in *Place* did hold that a canine sniff was sui generis and, under the facts in that case, did not constitute a search. *Id. Place*, however, involved the sniff of the outside of the suspect's luggage. While akin to sniffing the outside of the car, sniffing the outside of luggage does not compare to entering the car to perform the sniff. A dog sniffing inside the car is much more akin to opening up the luggage and then performing the sniff of the interior of the luggage and the contents packed within.

{¶34} It is understandable why there should be no expectation of privacy as to the outside of one's luggage while it sits on the skybridge, spins around the carousel in baggage claim, or sits somewhere else in the open for all the world to see. The same does not hold true, however, for its contents. Instead, there is an expectation of privacy as to the interior of the luggage even though the outside may be available for the world to see and dogs to sniff. *See id.* ("[A] person possesses a privacy interest in the contents of personal luggage that is protected by the Fourth Amendment.").

{¶35} The same logic generally applies to the interior of a vehicle. Thus, the Court in *Place* did not declare that a dog sniff can never be a search. Instead, *Place* held that a dog sniff of the *outside* of luggage is not a search. Courts have subsequently

15

expanded the logic of *Place* to hold that a dog sniff of the outside of a car, like the outside of a piece of luggage, is also not a search. *See State v. Wilson*, 2020-Ohio-3227, ¶ 19 (12th Dist.); *State v. Willoughby*, 2021-Ohio-2611, ¶ 25 (4th Dist.); *State v. Heath*, 2023-Ohio-2647, ¶ 26 (11th Dist.); *State v. Spratley*, 2021-Ohio-262, ¶ 19 (3d Dist.).

**{¶36}** The Ohio cases cited by the majority that have addressed similar circumstances involving a police dog jumping into the suspect's car are distinguishable from the facts in this case. Most importantly, in both of those cases, the facts show that the dog signaled that illegal drugs may be present and thus established probable cause before it entered the vehicles. *See State v. Napier*, 1998 Ohio App. LEXIS 2466, *4 (9th Dist. May 27, 1998) ("probable cause existed for a search of the interior of the car because the troopers testified that the dog's behavior had already changed while it was still outside the car, indicating that it had smelled illegal drugs inside the vehicle."); *State v. Brassfield*, 2004-Ohio-2412, ¶ 8-10 (8th Dist.) (probable cause existed where a positive alert by the dog sniffing the exterior corroborated the officer's prior observations of the apparent tampering with the vehicle's gas tank, defendant's license was illegible and could not be found in the database, and defendant did not fit the description of the name he gave the officer); *see also Palicki*, 97 Ohio App.3d at 178 (Holding probable cause existed for a search of the interior of the car before the dog was allowed inside the car, because the dog had already alerted while still outside the car, showing that he smelled illegal drugs in the car.).

**{¶37}** The majority expresses concern that if they agree with Barton, they would be rejecting long-standing precedents as applied to a dog sniff of a vehicle. However, the cases cited by the majority to justify their concern, all predate *Florida v. Jardines*, 569 U.S. 1 (2013), and the adoption of the common-law-trespass theory.

**{¶38}** Prior to *Jardines*, the reasonable-expectation-of-privacy basis stood

alone as the basis for evaluating whether a search had occurred. But, since *Jardines*, the analysis has changed. Now, it is necessary to also apply the trespass analysis to these cases; cases where the dog has not just sniffed around the outside of the vehicle, but also has entered into the vehicle's interior, where the privacy interest is much more akin to the inside of a home. Thus, the fact that *Jardines* involved a home is of little import. *See, e.g.*, *United States v. Ponce*, 734 F.3d 1225, 1227-1228 (10th Cir. 2013) ("We think that the Supreme Court's recent decision in *Jardines* . . . may call into question the application of some of our precedent that touches on this issue.").

**{¶39}** Here, when the dog entered the interior of the car, it committed a trespass. And, under the "search equals trespass plus investigatory intent" formula established in *United State v. Jones*, 565 U.S. 400 (2012), the only remaining question is whether that trespass was for an investigatory purpose. I conclude it was.

### Was there a Search?

**{¶40}** Yes.

**{¶41}** As the majority explains, the United States Supreme Court instructs a search for the purposes of Fourth Amendment analysis occurs when two elements are present: a trespass and an investigatory purpose. *Jones* at 404. In this case, it is agreed that the dog entered the interior of the car. The dog braced itself on the opened window of Barton's car and stuck its entire head inside before signaling to the officer. As stated, Barton refused to allow the police to search the interior of her car. Without Barton's permission, the dog's intrusion into the interior of her car constituted a trespass. *See State v. Jackson*, 2022-Ohio-4365, ¶ 15, quoting *Jones* at 407, quoting *United States v. Knotts*, 460 U.S. 276, 286 (1983) (Brennan, J., concurring in the judgment) (holding that under the common-law trespass doctrine, a search occurs when there is a "physical intrusion of a constitutionally

17

protected area in order to obtain information.").

**{¶42}** Therefore, the dog's intrusion into the cab of the car was a trespass. So, to determine if that intrusion constituted a search, we must next determine the purpose of that intrusion. If it was for the purpose of investigation, then it was a search.

### Was the trespass investigatory?

**{¶43}** Yes.

**{¶44}** As stated, to determine if probable cause was required prior to the government's drug-sniffing dog entering the cabin of Barton's car, the fundamental question is what was the purpose behind the dog entering the cabin of the car? If that purpose was to investigate for illegal drugs, then the entry into the cabin was a search.

**{¶45}** Here, neither the dog nor its handler took the stand. So, we are left with deductive logic and circumstantial evidence to determine the dog's purpose in entering the vehicle. The parties conceded below that the dog acted instinctively. By definition, instinct involves the response to an outside stimulus. Merriam-Webster defines "instinct" as "a largely inheritable and unalterable tendency of an organism to make a complex and specific response to environmental stimuli without involving reason." *Merriam-Webster Online*, https://www.merriam-webster.com/dictionary/instinct (accessed May 7, 2025).

**{¶46}** The determination of what that stimulus was in this case is at the core of determining if the entry was for the purpose of locating illegal drugs.

**{¶47}** There is no evidence in the record that the dog entered the car after it saw a cat, was offered a tasty treat, or was responding to some stimuli other than the stimulus it was trained to respond to—the smell of illegal drugs.

**{¶48}** As the court in *Randall* explained, there are two scenarios in which an entry by a drug dog not affirmatively encouraged or facilitated by its handler may be

18

deemed "instinctive": (1) having already detected an odor of narcotics, a dog's entry may be "instinctive" because it was tracing the odor to its source, or (2) having not yet detected an odor of narcotics, a dog's entry may be "instinctive" because it is searching for an odor to trace as a result of its training. *Randall*, 169 Idaho at 367-368, 496. Under either scenario, the purpose of the dog following its instinct and entering the vehicle was either that the dog was investigating to determine the source of an odor it had already picked up or it was in search of the odor it was trained to look, er, smell for.

**{¶49}** Here, while in the process of performing its sniff of the outside of the car, the dog jumped into the interior of the car, where there is a reasonable expectation of privacy, to follow its instinct (i.e., training) to respond to the stimulus of either the smell of illegal drugs or the desire to locate the source of the smell it was trained to find. Either way, it was for the purpose of investigation and was, therefore, a search.

**{¶50}** The search in this case may have had any number of problems, but a dog "ain't one." *See Jardines*, 569 U.S. 1 at 9, fn. 3 ("The dissent insists that our argument must rest upon . . . the dog . . . It is not the dog that is the problem, but the behavior that here involved use of the dog."). Instead, as in *Jardines*, the dog was simply doing what it was trained to do—investigate to determine if illegal drugs were present. Because the dog entered the vehicle in that effort to investigate—a search occurred. And because that search lacked probable cause, and because none of the recognized exceptions to the probable-cause requirement are present here, the search was unconstitutional. And, because the search was unconstitutional, the motion to suppress should have been granted.