[Cite as *State v. Unser*, 2026-Ohio-1267.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. | C-250329 |
| | | TRIAL NO. | C/24/CRB/14724 |
| Plaintiff-Appellee, | : | | |
| vs. | : | | |
| DIANE UNSER, | : | *JUDGMENT ENTRY* | |
| Defendant-Appellant. | : | | |

This cause was heard upon the appeal, the record, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 4/8/2026 per order of the court.**

**By:**_____
      **Administrative Judge**

[Cite as *State v. Unser*, 2026-Ohio-1267.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                    :       APPEAL NO.    C-250329
                                          TRIAL NO.     C/24/CRB/14724
    Plaintiff-Appellee,       :

  vs.                             :

                                          *O P I N I O N*

DIANE UNSER,                      :

    Defendant-Appellant.      :


Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: April 8, 2026


*Connie M. Pillich*, Hamilton County Prosecuting Attorney, and *Verjine V. Adanalian,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Lora Peters*, Assistant Public Defender, for Defendant-Appellant.

**NESTOR, Judge.**

**{¶1}** On August 26, 2024, Diane Unser was traveling on Pfeiffer Road when Officer Chahine pulled her over. Officer Chahine is a part of the K9 unit, and he conducted a free air sniff of Unser's car with his K9 Dingo. Dingo alerted Officer Chahine to the presence of narcotics. Officer Chahine then searched Unser's vehicle and discovered two empty syringes in her purse. Officer Chahine arrested Unser and the State charged her for the traffic violation as well as for possessing drug abuse instruments. She moved to suppress the evidence obtained during the traffic stop at the trial court, but the trial court denied her motion. She pled no contest to the drug charge and now appeals. Because there was no delay in Dingo's free air sniff and because the trial court had adequate knowledge of the facts necessary to sentence her for a misdemeanor of the first degree, we affirm the trial court's judgment.

## I. Factual and Procedural History

**{¶2}** While patrolling in Blue Ash in his marked K9 unit vehicle, Officer Chahine observed Unser speeding around 11:30 p.m. He followed her and saw her sharply cut over a solid white line to enter the left turn lane at a light. He initiated a traffic stop immediately. After he turned on his lights, he saw Unser "make furtive movements . . . like a hunch over to the center console area," in what looked like an effort "to conceal something." He ran her plates and saw the car was not registered to her. A second officer arrived almost immediately.

**{¶3}** Officer Chahine turned on his body-worn camera ("BWC") before the stop began. The State introduced the footage at the suppression hearing. In the video, Officer Chahine took roughly a minute to get out of his car and approach Unser. He walked up and explained why he pulled her over. She stated that she had come from visiting her son at the hospital and she was on her way to go see a friend who was going

3

to check out her car for issues. Officer Chahine thought it was suspicious that she was doing these activities late at night. He asked Unser if she had any contraband in her car and asked if his partner could search her vehicle. Unser said no to both.

**{¶4}** Officer Chahine took Unser's driver's license and insurance and returned to his vehicle to ask dispatch for a background check. At this point, he had the second officer take Unser out of her car so he could do a free air sniff with Dingo. Officer Chahine asked her to step out of her vehicle around four minutes into the stop, and Unser responded with, "Okay, that's fine," and "I don't have an issue with that."[1]

**{¶5}** Officer Chahine began the free air sniff with Dingo around six minutes into the stop. Dingo alerted Officer Chahine to the presence of narcotics on both the first and second pass around the car. Each time Dingo alerted, he did so in the same spot on the driver's side and passenger's side of the car.

**{¶6}** Officer Chahine returned Dingo to the car. He then informed Unser that Dingo alerted him to narcotics in the car. Unser stated there was nothing illegal in the car but explained that she had her late mother's prescriptions in her car. She was adamant that there was nothing else. Officer Chahine then began to search Unser's car.

**{¶7}** During the search, Officer Chahine discovered a case in Unser's purse that was located on her passenger seat, which contained two empty hypodermic syringes that were still wet on the inside. Officer Chahine returned to Unser and asked when her mother passed away. Unser said this past week but could not say the exact day. Prior to this, Unser had told the other present officer that her mother passed away a month ago.

---

[1] This court relies on the BWC timestamps in its analysis.

{¶8} Officer Chahine arrested Unser and read Unser her *Miranda* rights. He then questioned her about the syringes, and she said they belonged to her mother. Officer Chahine did not think that Unser was telling the truth but, she was insistent that the syringes were not hers, that the syringes did not contain illegal substances, and that she had moved them from the center console to her purse to throw them away. Officer Chahine assumed they could not be her mother's because they were still wet on the inside and because Unser had separately organized her mother's belongings from her own in her vehicle.

{¶9} While he was speaking with Unser, dispatch completed the BCI background check and reported to Officer Chahine. Officer Chahine then learned she had three previous drug charges for possession and trafficking.

{¶10} The State charged Unser for her traffic violation and for possessing drug abuse instruments. Defense counsel moved to suppress the evidence from the stop arguing that Officer Chahine did not have reasonable suspicion, that the traffic stop was prolonged, and that Dingo was not reliable enough to give Officer Chahine probable cause. The trial court overruled the defense's motion and Unser pleaded no contest.

{¶11} At the sentencing, the court found Unser guilty of violating R.C. 2925.12(A), possessing drug abuse instruments, which is a misdemeanor of the first degree. The charge was of the first degree rather than of the second degree because of Unser's prior drug charges, though the State failed to read that into the record. The court sentenced her to 180 days in jail, with 179 days suspended and one credited, in addition to a $10 fine and court costs. Unser now appeals raising two assignments of error.

### II. Analysis

**{¶12}** In her first assignment of error, Unser argues that the traffic stop was unlawfully prolonged to conduct a dog sniff, that Officer Chahine did not have reasonable suspicion, and that Officer Chahine could not rely on Dingo to accurately alert him to the presence of narcotics. In her second assignment of error, Unser argues that because the court found her guilty of a first-degree misdemeanor, the prosecutor had to put on the record that she had prior drug convictions to satisfy the statutory elements. We start with Dingo.

### A. First Assignment of Error

**{¶13}** Appellate courts' "review of a motion to suppress presents a mixed question of law and fact." *State v. Barton*, 2025-Ohio-1904, ¶ 6 (1st Dist.), citing *State v. Burnside*, 2003-Ohio-5372, ¶ 8. "When ruling on a motion to suppress, this court must defer to the trial court's factual findings if competent, credible evidence exits to support those findings." *Id.* "'Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.'" *Id.*, quoting *Burnside* at ¶ 8.

**{¶14}** "The Fourth Amendment protects individuals from unreasonable searches and seizures." *Id.* at ¶ 7, citing *Terry v. Ohio*, 392 U.S. 1, 8-9 (1968). Evidence that is obtained from unlawful searches and seizures is inadmissible and must be suppressed. *Id.*, quoting *United States v. Leon*, 468 U.S. 897, 916 (1984). A traffic stop is a "seizure" under the Fourth Amendment. *Id.* at ¶ 8. Generally, "a canine sniff in a public place does not constitute a 'search.'" *Id.*, citing *State v. Lopez*, 2006-Ohio-2091, ¶ 21 (1st Dist.). However, "'when a police officer's objective justification to continue detention of a person stopped for a traffic violation for the purposes of searching the vehicle is not related to the purpose of the original stop, and when that

continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure.'" *Lopez* at ¶ 18, quoting *State v. Robinette*, 80 Ohio St.3d 234 (1997), paragraph one of the syllabus.

{¶15} Unser does not contest that the stop was legal, but she argues that it was impermissibly prolonged. The State argues that Officer Chahine did not prolong Unser's stop because the free air sniff was performed within a matter of minutes. We agree with the State.

{¶16} Officer Chahine began the free air sniff roughly six minutes into the stop. Beginning the sniff six minutes into the stop was prompt and permissible. *See State v. Miles*, 2021-Ohio-1029, ¶ 7, 14-15 (5th Dist.) (a dog sniff that began five minutes into the stop and finished eight minutes into the stop did not prolong the stop where the officer stated a standard stop takes him approximately 15 minutes); *State v. Green*, 2016-Ohio-4810, ¶ 19-20 (7th Dist.) (a dog did not arrive on scene until ten minutes after the stop was initiated and eight minutes after the ticket was issued and this unconstitutionally prolonged the stop); *State v. Heath*, 2023-Ohio-2647, ¶ 13, 25 (11th Dist.) (reasonable suspicion was not necessary because the dog sniff occurred two to three minutes into the stop and a standard stop typically takes 15-20 minutes). Dingo was in Officer Chahine's K9 unit when Unser was pulled over. There was no delay in beginning the sniff and Officer Chahine did not prolong the stop to conduct the sniff.

{¶17} Because Officer Chahine completed the dog sniff in a timely manner, we do not need to determine if Officer Chahine had reasonable suspicion to conduct the sniff.

{¶18} Next, Unser argues Dingo was not reliable so he could not provide

Officer Chahine with the probable cause necessary to actually search the vehicle. However, as Unser states in her brief, "evidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert." *See Florida v. Harris*, 568 U.S. 237, 246 (2012).

**{¶19}** Dingo completed an intensive training program with Officer Chahine in 2021. Additionally, Dingo is up to date and certified with the State of Ohio by completing bimonthly checks. The trial court determined Dingo was reliable based on credible evidence. The defense argued Dingo was only 43 percent accurate but this was a skewed percentage that excluded all training runs from the calculations. The record contains credible evidence supporting the trial court's finding that Dingo is reliable and we will not disturb that factual finding.

**{¶20}** Because the dog sniff did not prolong the stop, and Dingo provided Officer Chahine with probable cause to search the vehicle, we overrule Unser's first assignment of error.

### B. Second Assignment of Error

**{¶21}** In her second assignment of error, Unser argues that because the court found her guilty of a first-degree misdemeanor under R.C. 2925.12(A), the prosecutor had to read in the facts at the sentencing that she had prior drug convictions.

**{¶22}** We use a de novo standard of review to determine if the explanation of circumstances was sufficient to establish all elements of the offense. *State v. Hanson*, 2019-Ohio-3688, ¶ 15 (2d Dist.), citing *State v. O'Brien*, 2017-Ohio-7219, ¶ 35 (5th Dist.). R.C. 2937.07 provides that a plea of no contest to a misdemeanor offense "shall constitute an admission of the truth of the facts alleged in the complaint and that the judge or magistrate may make a finding of guilty or not guilty from the explanation of the circumstances of the offense."

**{¶23}** Unser was charged with a violation of R.C. 2925.12(A), which required the State to prove that the defendant knowingly possessed an instrument that is used for the administration of a dangerous drug. If there is no prior drug abuse offense, then the charge is for a misdemeanor of the second degree. R.C. 2925.12(C). If there is a prior conviction for a drug offense, then it is a misdemeanor of the first degree. *Id.*

**{¶24}** At the sentencing, the State read the facts to be,

> Judge, starting with the possessing drug abuse instruments, on or about August 26th, 2024, in Hamilton County, State of Ohio, the defendant, Diane Unser, did knowingly possess two hyperthermic [sic] syringes for the abuse of drugs in violation of Ohio Revised Code 2925.12. Based on a prior misdemeanor of the first degree, the syringes were found in Ms. Unser's purse. They were sent to the lab and tested positive for cocaine.

Immediately prior to the State reading the facts, the trial court said, "It's charged as a misdemeanor of the first degree. I assume it's an M1 based on a prior conviction, is that correct?" Defense counsel nodded his head "yes," and the trial court stated, "I see counsel is shaking his head correct." Though it is a better practice for the State to clearly set forth all of the pertinent facts, the record in this case establishes all elements for Unser's first-degree conviction.

**{¶25}** The Ohio Supreme Court has explained, "[T]he explanation-of-circumstances requirement is a procedural protection, rather than a part of the prosecution's burden of proof[.]" *City of Girard v. Giordano*, 2018-Ohio-5024, ¶ 19. The explanation of the circumstances is not necessary to establish all the elements. *Id.* ("If an explanation of circumstances were necessary to establish the elements of the

crime, the need for such a requirement would be even greater in felony cases—where the stakes are higher—than in misdemeanor cases.").

{¶26} Here, all the elements of the first-degree misdemeanor were met both by defense counsel's affirmation and by the evidence introduced at the suppression hearing. Looking at the record, it is clear the trial court had sufficient facts to convict Unser of a first-degree misdemeanor.

{¶27} Accordingly, we overrule Unser's second assignment of error.

### III. Conclusion

{¶28} Having overruled both assignments of error, we affirm the trial court's judgment.

Judgment affirmed.

ZAYAS, P.J., and MOORE, J., concur.